**William Alvah SMITH, Plaintiff-Appellant,**

v.

**SINCLAIR REFINING COMPANY, Defendant-Appellee.**

No. 68, Docket 24679.

United States Court of Appeals Second Circuit.

Argued Feb. 7, 1958.

Decided July 7, 1958.

George A. Smith, Philadelphia, Pa. (Harold I. Popp, Buffalo, N. Y., Edward Paul Smith, Philadelphia, Pa., on the brief), for plaintiff-appellant.

Roger T. McLean, New York City (Curt von Boetticher, Jr., New York City, Clayton M. Smith, Buffalo, N. Y., on the brief), for defendant-appellee.

Before MEDINA, WATERMAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff brought this action on May 4, 1955 for the infringement of patent 2,247,926 issued to him on July 1, 1941. The defendant, amongst other defenses, pleaded laches. Thereafter a separate trial on the issue of laches was held and resulted in a judgment in defendant's favor dismissing the complaint on the merits. Comprehensive findings of fact and conclusions of law were made by the trial court.

Plaintiff filed an application for a patent on February 27, 1930. Plaintiff's application was involved in an interference with an application of John Walsko filed August 1, 1931, the interference lasting from September 22, 1933 until February 27, 1939. The defendant, from 1934 until the time suit was commenced, was allegedly using the process described in the Walsko application in connection with the refining of oil by a nitrobenzene-acid process. The interference proceedings resulted in an award by the Examiner of Interferences to the plaintiff, which award was affirmed by the Board of Appeals and the Court of Customs and Patent Appeals. During the course of the interference proceedings the defendant had made an offer to acquire plaintiff's rights on his side of the interference. To this end there had been a conference between a representative of defendant, plaintiff, and plaintiff's attorney. Defendant's representative stated that "we considered the Smith application at the time more or less of a nuisance value to us." Plaintiff's attorney took issue with this statement claiming that "if we prevail in the interference we will control treatment of lubricating oil with nitrobenzene and sulphuric acid and control the process at Wellsville [the location of defendant's plant]." Thus it is clear that during the period of the interference plaintiff was aware that the process for

which he was seeking a patent was also the process being used by the defendant.

Shortly after plaintiff's patent was granted, on July 1, 1941, plaintiff's attorney, on August 19, 1941, wrote to defendant informing it of the issuance of plaintiff's patent and enclosed a copy of the patent. He advised defendant that "We understand that you have been using for some time a process which infringes some of the claims of this patent, particularly claim 9, and possibly others. This patent is now brought to your attention so that any further treatment of hydrocarbons by your concern which infringes any of the claims of this patent will be with full knowledge of the existence of this patent" (Exh. D). On the same day the attorney wrote to the same representative of the defendant with whom he had been previously conferring advising him of the issuance of plaintiff's patent and stating that "we are giving formal notice to the company, so that any further use of the nitro benzene and sulphuric acid in your treating process or of any other benzene, will be with full knowledge of the existence of this patent and will not be through inadvertence" (Exh. C).

During the five and one-half years of the interference proceedings plaintiff had an opportunity to become aware of the process defendant was using. In fact plaintiff admitted that, upon information he had obtained from the interference proceedings, he believed that defendant was infringing his patent. Furthermore, the process used by defendant was described in trade journals between 1938 and 1949. These journals were available to plaintiff. Plaintiff's allegation of infringement "for a long time past" was based upon "what I read." From this reading plaintiff concluded that "it is apparent that you [defendant] must have been infringing the patent during that period at least."

Fourteen years then elapsed during which plaintiff made no claim of infringement. On May 4, 1955 the present complaint was filed. During this period defendant operated its Wellsville, N. Y.

plant but plaintiff made no effort from 1941 to 1953 to ascertain whether defendant was using his process despite his attorney's letter in 1941 that defendant had been using it for some time. During the fourteen-year period of inactivity, defendant's officer to whose attention plaintiff's notice of August 19, 1941 was addressed died as did both counsel for defendant in the interference proceeding. Although the amount was quite small in relation to the value of the product, defendant since 1941 has expended some $31,600 on capital improvements in connection with the nitrobenzene-sulphuric acid unit at its Wellsville refinery. Defendant also submitted proof that had an infringement proceeding been commenced it could have switched to non-infringing processes.

All these facts point to prejudice to defendant and justify the trial court's conclusion in holding that plaintiff is barred from maintaining this suit because of laches. The trial court found in substance that plaintiff had notice of defendant's process and its use by defendant during the interference proceedings; that plaintiff in 1941 sent to defendant a formal notice of infringement; that knowledge of defendant's commercial use of the process was available to plaintiff in printed literature and from public disclosures; that the operations of defendant's Wellsville plant were not secret; and that from 1941 to 1953 plaintiff made no effort to ascertain whether defendant was continuing its use of the process. These findings are fully supported by the evidence. From these facts the court concluded that plaintiff had sufficient knowledge in 1941 to put him upon inquiry; that his fourteen-year delay in taking any steps to enforce his patent rights amounted to laches; that defendant was prejudiced in a substantial way by the delay; and that judgment should be granted dismissing the complaint.

The essential elements necessary to invoke the doctrine of laches have all been established here (Shaffer v. Rector Well Equipment Co., 5 Cir., 1946, 155 F.2d 344, 345). The defendant, having lived

through a six-year interference proceeding with plaintiff in which the various claims were disputed, was entitled to believe as each year passed that plaintiff was not so sure that his patented claims had been invaded as he had originally asserted in his 1941 notice, or in any event, was entitled to believe that the plaintiff's alleged rights had been abandoned by him. Long delay, the death of witnesses, the availability to defendant of a non-infringing process, and financial outlay by defendant, all are factors which would seriously prejudice defendant were it forced to defend a suit at this time (Potash Co. of America v. International Minerals & Chemical Corp., 10 Cir., 1954, 213 F.2d 153; Lukens Steel Co. v. American Locomotive Co., 2 Cir., 1952, 197 F.2d 939; Brennan v. Hawley Products Co., 7 Cir., 1950, 182 F.2d 945; Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 1943, 135 F.2d 617; Gillons v. Shell Co. of California, 9 Cir., 1936, 86 F.2d 600; Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir., 1928, 27 F.2d 823).

The judgment is affirmed.