Fuld, J.
 

 The novel question presented by this appeal is whether section 1451 of the Civil Practice Act authorizes a stay of proceedings brought in violation of an arbitration contract, where such proceedings are pending, outside of New York State, before an administrative agency of the Federal Grovernment.
 

 The petitioner, Wolff Company, Inc. (a corporation), just as its predecessor, Wolff Company (a partnership), is a broker or agent dealing in perishable agricultural commodities, while the respondent, Tulkoff’s Horse Radish Products Co., is a dealer in perishable agricultural commodities. The petitioners, corporation and partnership, doing business in New York, and the respondent, a partnership doing business in Maryland, are licensed pursuant to the provisions of the Perishable Agricultural Commodities Act (U. S. Code, tit. 7, §§ 499a-499s).
 

 In late January, 1959 and early February, 1959, Wolff Company, the partnership, and Tulkoff’s engaged in negotiations by telephone concerning the purchase of Japanese horseradish roots. According to an affidavit submitted on behalf of the petitioners, these telephone conversations ‘1 were finalized, subject to written confirmation” on or about February 5, 1959 and, shortly thereafter, a letter was sent in which Wolff Company advised Tulkoff’s that it would
 
 “
 
 mail * * * as soon as possible copies of Contracts as well as facsimile Credit
 
 *360
 
 Letter ”. On February 6, Wolff Company sent the respondents two “ Bought Notes ”, covering the purchase in question, which contained broad arbitration provisions.
 

 The respondents’ version of the sale agrees in all particulars with that of the petitioners except that they insist that the sale was verbal, without any discussion concerning arbitration of future controversies, and they point to the letter of February 5, as well as the “ Bought Notes ”, as confirmation of an already consummated sale. It is on this basis that Tulkoff’s urges that no agreement or consent to arbitrate any dispute was ever made.
 

 In March of 1959, the horseradish roots arrived from Japan and were accepted and paid for by Tulkoff’s. Thereafter, on May 29, Tullcoff’s lodged a preliminary complaint with the United States Department of Agriculture claiming that all shipments failed “to grade according to contract” and that the merchandise was unfit for resale purposes. This preliminary complaint, filed pursuant to subdivision (a) of section 6 of the Perishable Agricultural Commodities Act (U. S. Code, tit. 7, § 499f), was followed in August by a “hearing” before the Agricultural Marketing Service, the purpose of which was to “ achieve a settlement between the parties ”. No settlement was reached, however, and Tulkoff’s lodged a formal complaint with the Department of Agriculture in October, 1959.
 

 This complaint, requiring an answer within 20 days, was served on the petitioners in late December, but they requested and received permission to put off their time to answer. However, instead of interposing an answer in the proceeding in the Department of Agriculture, the petitioners, relying on the arbitration provision in the “ Bought Notes ” which they had sent to the respondents, filed the petition now before us for a stay of the proceedings before the Agriculture Department.
 

 In opposition to the petition for a stay, Tulkoff’s alleged (1) that its rights under the Perishable Agricultural Commodities Act may not be vitiated by an arbitration agreement; (2) that the court has no jurisdiction to stay a proceeding pending before a Federal administrative agency; (3) that no agreement or contract exists between the parties requiring arbitration; and (4) that the petitioners have waived any purported right to compel arbitration.
 

 
 *361
 
 In denying the motion for a stay, the court at Special Term placed its decision upon the ground that it was ‘ ‘ without power to stay the Federal proceeding ”, The Appellate Division affirmed, and the appeal is before us by our permission.
 

 The grant of rights under the Perishable Agricultural Commodities Act was not designed to preclude resort to other statutory or common-law remedies. The statute unequivocally declares that liability under the act ‘
 
 ‘
 
 may be enforced either
 

 (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction”, and it goes on to provide that
 
 “
 
 this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies” (U. S. Code, tit. 7, § 499e; also, § 499o; see
 
 Le Roy Dyal Co.
 
 v. Allen, 161 F. 2d 152, 157;
 
 Krueger
 
 v.
 
 Acme Fruit Co.,
 
 75 F. 2d 67). The question then arises whether the remedy sought by the petitioners, a stay, is available. The respondents claim that it is not, contending that section 1451 of the Civil Practice Act empowers the New York courts to stay only actions or proceedings pending in New York tribunals and that, accordingly, in this ease the court had no jurisdiction to stay the administrative proceeding before the United States Department of Agriculture.
 

 The argument lacks merit; the courts of this State possess the power to stay proceedings wherever they may be pending. Had it been the design of our Legislature to limit the stay, as urged by the respondents, words were at hand to reflect that design. The Federal arbitration statute, for instance, sanctions a stay
 
 only
 
 of an action or proceeding
 
 ‘1
 
 brought in any of the courts of the United States ” (U. S. Code, tit. 9, § 3). The broad, unqualified language of the New York statute, in sharp contrast with this, simply recites that ‘1 If any action or proceeding be brought upon any issue otherwise referrable to arbitration
 
 * * *
 
 the supreme court * * * shall stay all proceedings in the action or proceeding” (Civ. Prac. Act, § 1451). The absence of limiting words is, as suggested, significant, bespeaking as it does an intention that the Supreme Court is empowered to stay actions or proceedings irrespective of where they may have been instituted.
 

 The purpose of a stay is to enforce a contractual obligation to arbitrate by preventing other actions or proceedings ineon
 
 *362
 
 sistent with that obligation. If onr courts may only prevent inconsistent actions or proceedings in the courts or administrative agencies of this State, they will only be providing partial enforcement of the promise to arbitrate; if the'court’s power to stay were thus limited, the obligation of the contract could easily be frustrated by the prosecution of actions or proceedings in another jurisdiction.
 

 At common law, “ Arbitration agreements * * * meant very little ” because they were not subject to specific enforcement. (See
 
 Matter of Feuer Transp. [Local No. 445],
 
 295 N. Y. 87, 91.) It was dissatisfaction with this situation that led to the enactment of our Arbitration Law. And, as this court observed in the
 
 Feuer Transportation
 
 case (295 N. Y., at p. 91), ‘ ‘ Under the new statute. arbitration became both orderly and enforcible and was made subject in effect to a decree for specific performance.” ■ To deny to our courts the power to grant specific performance of an arbitration clause by enjoining the prosecution of foreign proceedings would be a step backward. It would partially re-establish the long-abandoned doctrine that an agreement to arbitrate is revocable. We may not and should not take such a step unless expressly directed to do so by the Legislature.
 

 In short, the petitioners seek an order forbidding the respondents from pursuing their remedy before the Department of Agriculture. If the respondents did agree to arbitrate all differences arising from the sale of Japanese horseradish, and if there has been no waiver of that contractual obligation, neither the New York Arbitration Law nor the Federal Perishable Agricultural Commodities Act stands in the way of specifically enforcing the agreement to arbitrate. (Cf.
 
 Watkins
 
 v.
 
 Hudson Coal Co.,
 
 151 F. 2d 311, 320, cert. denied 327 U. S. 777;
 
 Donahue
 
 v.
 
 Susquehanna Collieries Co.,
 
 138 F. 2d 3, 6-7.) Having personal jurisdiction over the respondents by reason of the fact, if it is one, that they agreed that 1 ‘ Any controversy or claim * * * shall be settled by arbitration in New York, N. Y.”, a decree may be entered enjoining the respondents from continued prosecution of their claim before the Department of Agriculture. (Cf.
 
 Arpels
 
 v.
 
 Arpels,
 
 8 N Y 2d 339, 341;
 
 Garvin
 
 v.
 
 Garvin,
 
 302 N. Y. 96.)
 

 Since Special Term denied the petitioners’ motion on the ground that it was “without power to stay the Federal pro
 
 *363
 
 ceeding”, there must be a reversal—unless it is established that the parties either had not entered into a contract to arbitrate or, having done so, the petitioners had waived their right to arbitration. We turn, therefore, to a consideration of these questions.
 

 The factual dispute concerning the maldng of a contract to arbitrate, outlined above, consists essentially of a disagreement over whether the parties’ initial telephone conversations “ closed the deal ” or whether they were preliminary, or subject, to the subsequent “ Bought Notes ” containing the arbitration clause. Whether these facts fall within our holding in
 
 Matter of Albrecht Chem. Co. (Anderson Trading Corp.)
 
 (298 N. Y. 437) or our holding
 
 in Matter of Helen Whiting, Inc. (Trojan Textile Corp.)
 
 (307 N. Y. 360) depends on whose version of the sale is accepted. This must be resolved at a hearing to be held at Special Term.
 

 The respondents’ further claim, also disputed by the petitioners, that there was a waiver of any rights to arbitration by reason of laches on the part of the petitioners and their participation in a hearing before the Department of Agriculture likewise involves a determination of fact calling for a hearing and decision by the court at Special Term. (See
 
 Matter of Zimmerman
 
 v.
 
 Cohen,
 
 236 N. Y. 15, 19; cf.
 
 Matter of Terminal Auxiliar Maritima, 8. A. [Winkler Credit Corp.],
 
 6 N Y 2d 294, 299-300;
 
 Matter of Haupt
 
 v.
 
 Rose,
 
 265 N. Y. 108, 110;
 
 Nagy
 
 v.
 
 Areas Brass & Iron Co.,
 
 242 N. Y. 97, 98-99.)
 

 The order of the Appellate Division should be reversed, with costs in this court and in the Appellate Division, and the matter remanded to Special Term for further proceedings in accordance with this opinion.
 

 Chief Judge Desmond and Judges Dye, Feoessel, Van Vooeiiis, Bueke and Fostee concur.
 

 Order reversed, etc.