H. M. Hamilton & Co., Inc., Respondent, *v.* American Home Assurance Company et al., Appellants.

H. M. Hamilton & Co., Inc., Respondent, *v.* Allstate Insurance Company et al., Appellants.

First Department, July 9, 1964.

*Frederick A. Terry, Jr.*, of counsel (*Roy H. Steyer* with him on the brief; *Sullivan & Cromwell*, attorneys), for appellants.

*George H. Bailey* of counsel (*Manro T. Oberwetter* and *Charles D. Peet, Jr.*, with him on the brief; *Milbank, Tweed, Hadley & McCloy*, attorneys), for respondent.

BOTEIN, P. J. These companion actions are concerned with agreements by which appellants, a numerous group of insurance companies transacting business in New York, authorized respondent to bind and write reinsurance on their behalf. The agreements were terminable on 90 days' notice and were terminated by appellants as of December 31, 1963. By that time differences had arisen concerning the balance of accounts under the agreements, and the extent of appellants' right to examine respondent's books and records was also in dispute.

Although each agreement required arbitration in New York City of any dispute or difference of opinion arising '' with reference to the interpretation of this Agreement or the rights with respect to any transaction involved '', appellants on Janu-

ary 27, 1964 instituted actions against respondent and its president in the Superior Court of Fulton County, Georgia — in which State respondent has its principal place of business — to enforce access to respondent's books and records and for an accounting. On February 3 respondent gave notice to appellants of intention to arbitrate and on February 5 commenced these actions to compel arbitration and to restrain appellants from pursuing the Georgia suits; and it also moved for orders granting such relief. On February 6, the date on which respondent was required to show cause in the Georgia court why the relief there sought should not be granted, respondent served answers in the Georgia suits and pleaded the arbitration provisions as a bar to their maintenance. Thereafter Special Term enjoined appellants from proceeding against respondent in the Georgia suits, held that appellants were required to arbitrate, and directed that the selection of arbitrators proceed.

Special Term correctly found authority for its disposition in *Matter of Wolff Co. (Tulkoff)* (9 N Y 2d 356, 361–362). While that case involved a stay of extra-State administrative proceedings, its rationale is applicable to extra-State judicial proceedings, as the following extract from the opinion makes clear: " The purpose of a stay is to enforce a contractual obligation to arbitrate by preventing other actions or proceedings inconsistent with that obligation. If our courts may only prevent inconsistent actions or proceedings in the courts or administrative agencies of this State, they will only be providing partial enforcement of the promise to arbitrate; if the court's power to stay were thus limited, the obligation of the contract could easily be frustrated by the prosecution of actions or proceedings in another jurisdiction." (See, also, *Matter of Demchick [Amer. Alloys Co.]*, 22 Misc 2d 920, affd. 11 A D 2d 771.) The CPLR has not limited the doctrine of the decision (6 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 7503.22; Thornton, Practice Commentary to CPLR 7501; McKinney's Cons. Laws of N. Y., Book 7B).

It is the public policy of this State that " those who agree to arbitrate should be made to keep their solemn, written promises " (*Matter of Grayson-Robinson Stores*, 8 N Y 2d 133, 138). It would further frustrate the policy which *Matter of Wolff Co. (Tulkoff)* (*supra*) sought to promote if we accept appellants' argument based on the circumstance that the Georgia litigation antedated the New York litigation. For an action instituted in contravention of an arbitration agreement of course precedes an attempt to stay it, and if the action is brought

in a foreign jurisdiction it is always open to the party seeking the stay to plead the arbitration agreement as a bar, for whatever the plea may be worth (cf. *Pena Copper Mines Ltd.* v. *Rio Tinto Co.*, 105 L. T. R. 846, 850, 851). That the Court of Appeals in *Matter of Wolff Co.* (*Tulkoff*) was well aware of the considerations of comity appellants advance is emphasized by its reference at page 362 to *Arpels* v. *Arpels* (8 N Y 2d 339, 341).

Respondent did not prejudice its position by answering the Georgia pleadings. A right to arbitration is not waived by an answer which asserts it, if enforcement of the right is seasonably undertaken (*Matter of Haupt* v. *Rose*, 265 N. Y. 108, 111; *Nagy* v. *Arcas Brass & Iron Co.*, 242 N. Y. 97; *Matter of Hosiery Mfrs. Corp.* v. *Goldston*, 238 N. Y. 22, 27; *Short* v. *National Sport Fashions*, 264 App. Div. 284). Nor can we agree that answers insisting on the right to arbitration were intended in the present context as an election that Georgia determine whether the right existed. Respondent was protecting the right as best it could where it could. "The only election made * * * was to proceed by arbitration" (*Matter of Haupt* v. *Rose, supra,* p. 111). We do not find in the remarks of respondent's Georgia counsel on February 6 any indication that New York jurisdiction was being abandoned.

Each of the agreements sets forth a formula for the calculation of profits and losses, requires that respondent furnish appellants with accountings, and grants appellants access to respondent's books and records. Whether respondent has submitted complete and accurate statements, whether appellants are entitled to the inspection of books and records which they demanded — the issues in the Georgia suits — are so clearly within the scope of the arbitration clause, as are the other disputes specified in the notice of intention to arbitrate, that remand to determine arbitrability would serve no purpose. "It is settled that under a broad provision for arbitration, such as we have here, arbitration may be had as to all issues arising subsequent to the making of the contract. [Cases cited.] The so-called ' termination ' or ' cancellation,' relied upon by Winkler to defeat the arbitral process, was nothing more or less than a ' termination ' of a contract for an alleged breach or nonperformance of its terms. That does not put an end to the right to arbitrate claims accruing prior thereto, for, if it did, an arbitration clause could rarely, if ever, be carried out " (*Matter of Terminal Auxiliar Maritima* [*Winkler Credit Corp.*], 6 N Y 2d 294, 298). We are also of opinion that service was validly effected on appellant Union Reinsurance Company of Zurich.

504

The orders and judgments appealed from should be affirmed, with costs.

EAGER, J. (dissenting in part). I would affirm the judgments and orders appealed from only to the extent of granting plaintiff's motions for a preliminary injunction restraining the defendants from further proceedings in the Georgia actions pending the determination of the actions brought in this State, and would remand the parties either to a summary judgment application or to a trial of the alleged issues in the actions here. Aside from the failure to comply with fundamental procedural requirements entitling the plaintiff to judgments in the actions, the affidavits and documents disclose issues of fact which should not have been by-passed or summarily disposed of on the motions before answer for a preliminary injunction.

The decrees here appealed from, in form and purported effect of judgments, were rendered on motions made at time of service of the summons and complaint and before answer. By recital in the decrees, it appears that they were rendered on the basis of the plaintiff's complaints and affidavits without consideration of defendants' answers which were served pending the determination of the motions. The answers are not recited.

The general function of a judgment is to settle and determine issues. '' It is the decree of the court as the result of the issue raised '' (*Strauss* v. *Guilhou,* 80 App. Div. 50, 51). In the absence of consent or a proper case for accelerated judgment, there is no authority for the rendition of a judgment in an action prior to the proper formulation of issues. The CPLR provisions for an accelerated judgment are not applicable to authorize judgment for the plaintiff in this type of action on an application for preliminary injunction made at the time of the service of the summons and complaint. (See CPLR 3201–3222.)

The defendants insist that there are issues which should not have been summarily determined on motion. Without doubt, there is before the court the issue of whether or not special circumstances exist entitling the plaintiff to an injunction restraining the defendants from proceeding with the actions in the State of Georgia. The jurisidiction of the court there was first invoked, and, as pointed out by Mr. Justice STEUER, principles of comity may forbid the stay by the court here of the proceedings in Georgia. (See *Latham & Co.* v. *Mayflower Ind.,* 278 App. Div. 90; *Merritt-Chapman & Scott Corp.* v. *Mutual Benefit Life Ins. Co.,* 237 App. Div. 70; *Locomobile Co.* v. *American Bridge Co.,* 80 App. Div. 44; *Burgess* v. *Smith,* 2 Barb. Ch. 276.) '' It is only in extreme and extraordinary cases that

the court will break the rule of comity which forbids the granting of an injunction to stay proceedings which have been commenced in a foreign court of competent jurisdiction ". (*Latham & Co. v. Mayflower Ind., supra,* p. 94.)

The proper disposition of the actions here and the plaintiff's right to a permanent injunction staying the proceedings in the Georgia actions may depend upon whether or not the issue as to arbitrability of the disputes between the parties may be disposed of in the Georgia actions. Such issue has been tendered in said actions by a plea in abatement in the answer of the plaintiff (defendant there). If an adjudication upon the merits upon such plea may be obtained in the Georgia court, then, it would appear that there is no justification for interference with the orderly proceedings of such court. But the Georgia law has not been properly alleged, proved or briefed in this connection, and it is not clear what relief the plaintiff may be able to obtain in the Georgia actions. There is a serious question whether or not a plea of arbitrability will constitute a defense or justify affirmative relief in the Georgia actions. (See 6 C. J. S., Arbitration and Award, § 29.)

In any event, the papers submitted on these preliminary motions do not make such a clear showing of " extreme and extraordinary " circumstances justifying the court to depart from the rule of comity to the extent of permanently restraining the proceedings in the foreign State. It may very well be that the Georgia actions should be allowed to proceed in their ordinary course, with a stay in the meantime of the proceedings here for arbitration. The defendants' attorneys are entitled to a proper opportunity to formulate and develop the relevant issues in this connection, and it does not appear that this will result in prejudice to the plaintiff in any of its substantial rights.

STEUER, J. (dissenting). Plaintiff corporation has its main office in Georgia. It has two contracts with the several defendants, insurance companies, for the placing of reinsurance. One of the contracts is with 16 companies, the other includes 18 companies. Both contracts provide for arbitration of disputes. As the business between the defendants and plaintiff spread all over the country, the contracts provide that arbitrations are to be held in New York City unless otherwise agreed upon. There is no provision that New York law shall apply to the arbitrations or to any proceedings in connection with them.

Several of the companies experienced dissatisfaction with the way plaintiff was handling reinsurance matters and desired an examination of plaintiff's books (a right granted them under the

contracts), an accounting, and whatever relief such an accounting showed them entitled to. They began two actions in Georgia seeking that relief. Plaintiff answered in the Georgia actions. Among other defenses, it set up the agreement to arbitrate as a plea in abatement. There has been no decision by the Georgia court on this plea, but that court has temporarily restrained plaintiff from removing or altering its books and records. Prior to the institution of these proceedings, counsel for the defendants there (the moving party here) expressed their readiness to proceed in the Georgia actions. This was presumably on all issues, including the right to arbitrate.

Plaintiff demanded arbitration in New York. Following that, it sought by special proceeding to compel arbitration, with a stay of the Georgia actions. These proceedings were abandoned and plaintiff commenced two actions, one in regard to each of the contracts. In these actions permanent injunctions against the companies prosecuting the Georgia actions is sought and also a direction to them to arbitrate. On a motion for a preliminary injunction, Special Term granted all the relief asked for in the complaint.

Special Term rested its determination on the fact that it had the power to restrain defendants from proceeding in Georgia. To a degree it has that power (*Matter of Wolff Co. [Tulkoff]*, 9 N Y 2d 356). But even assuming that the power goes to the extent claimed, there is a vast difference between a power and its proper exercise. It has always been the rule that proceedings begun in another State should not be interfered with unless there is some necessity clearly shown (*Merritt-Chapman & Scott Corp. v. Mutual Benefit Life Ins. Co.*, 237 App. Div. 70; cf. *Colson v. Pelgram*, 259 N. Y. 370; *Savage v. Allen*, 54 N. Y. 458). Generally the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of rules of comity to interfere. This rule, of very long standing, was admirably enunciated in this State as far back as 1847 in *Burgess v. Smith* (2 Barb. Ch. 276) and has been quoted with approval frequently since. It is there stated (p. 280): " [I]f this court has the power, it must be a very special case which will induce it to break over the rule of comity, and of policy, which forbids the granting of an injunction to stay the proceedings in a suit, which has already been commenced, in a court of competent jurisdiction in a sister state."

Two years later the United States Supreme Court made a very similar pronouncement. In these comparatively early days of exploration of the effect of concurrent jurisdiction in courts of several States and the United States, the words are specially

significant. "It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause * * * and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other. * * * The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum." (Mr. Justice GRIER, in *Peck* v. *Jenness,* 7 How. [48 U. S.] 612, 624–625.)

That this continues to be the law is evident from the fact that it was quoted with approval over 115 years later, in *Donovan* v. *City of Dallas* (377 U. S. 408) where the Supreme Court held that an order of the Texas Supreme Court restraining the prosecution of a related action in the Federal court was invalid.

Of course, if special circumstances do exist, they will warrant restraining the foreign action. Such circumstances are if the action sought to be restrained is vexatious, oppressive or instituted to obtain some unjust or inequitable advantage (*Savage* v. *Allen, supra*; *Merritt-Chapman & Scott Corp.* v. *Mutual Benefit Life Ins. Co., supra*). The action in Georgia is neither vexatious nor oppressive. Georgia is the moving party's home jurisdiction. In a case in which voluminous records will presumably play a large part, it is the place where those records are located. Actually the plaintiff might well claim that suit against it in any other jurisdiction would be vexatious and oppressive. The claim is, however, seriously made that it will give the plaintiff there, defendants here, an inequitable advantage. That advantage is stated to be that plaintiff will lose its right to arbitrate. To support this, all that is shown is that the courts of Georgia take a somewhat less favorable view of the right of precedence of arbitration than do the courts of this State. This is hardly a ground to base a claim of oppression. In the first place, by its own pleading plaintiff here has submitted the question of its right to arbitrate to the Georgia court. There is absolutely nothing to show, nor any reason to believe, that the Georgia courts will not determine the issue in accord with whatever law is applicable. What plaintiff ostensibly fears is that the Georgia

court will apply Georgia law and that this may result in limiting the scope of the arbitration. Assuming this to be the result, it is by no means oppressive. Concededly plaintiff's right to arbitrate depends on the contracts. Neither of these, including the arbitration clauses, is stated to be governed by New York law. Nor is there any language from which an intent can be deduced that whether or not arbitration should be had, or the extent of it, is to be governed by New York law. The mere fact that in the absence of agreement as to any other site arbitration would be conducted in New York City is neither an agreement to have the contract interpreted by New York law nor any indication of intent to make such an agreement. It can hardly be said that the foreign suit seeks an unfair advantage because the court there will follow the law applicable to the case rather than a law which the party seeking to restrain prefers to have applied (*Paramount Pictures* v. *Blumenthal*, 256 App. Div. 756).

Nor does *Matter of Wolff Co.* (*Tulkoff*) (9 N Y 2d 356, *supra*) mandate a different conclusion. On its facts the case does not deal with the specific situation. There the proceeding restrained was not an action pending in the courts of another jurisdiction, or even an action at all. The proceeding was one under the Perishable Agricultural Commodities Act (U. S. Code, tit. 7, § 499a *et seq.*) before the Agricultural Marketing Service. It was, in the court's words, "not designed to preclude resort to other statutory or common-law remedies" (p. 361). But it is true that the opinion does not rest on this ground but rather on the ground that the provisions of section 1451 of the Civil Practice Act vest the Supreme Court with power to stay actions irrespective of where they may have been instituted.

Section 1451 of the Civil Practice Act gave the right to stay proceedings pending arbitration to the Supreme Court or the court in which the action is brought. As seen in *Wolff,* no court at all was involved and an applicant for a stay had perforce to go to the Supreme Court. If a court — even a foreign court — was involved, the petitioner could conceivably under the strict wording of the statute go to either. But under the successive statute (CPLR 7503, subd. [a]) (which statute governs this application), if the court in which the action is pending has jurisdiction to compel arbitration, the application must be made in that court. This would certainly include a foreign court, as *Wolff* stated that when the predecessor section referred to an action it meant an action pending in any court, anywhere. A similar interpretation is indicated. And this is the only inter-

pretation which can make effectual the rule of comity which restricts the enjoining of actions in foreign courts.

It is moreover crystal clear that these maneuvers by the plaintiff are an effort to forestall the opening of its books. The papers show that a demand was made in accord with the contract to allow a representative of the insurance companies to examine the books. The demand was refused. The Georgia suit followed. When an injunction in regard to the books issued, came this attempt to block revelation by enjoining all procedures in Georgia.

The motion should have been denied. But in any event no permanent injunction should have issued. Putting aside the procedural proposition that the relief granted was in excess of what was requested, the injunction clearly by-passes the issues. Will there be irreparable damage if the Georgia action is allowed to take its course? Is there no question at all of plaintiff's right to arbitration, and are the defendants to have no opportunity to contest this issue? While it is believed that plaintiff has shown no right to any relief, it is submitted that at least on these grounds the order cannot be allowed to stand.

The orders should be reversed and the motions denied.

McNally and Staley, JJ., concur with Botein, P. J.; Eager, J., dissents in part in opinion; Steuer, J., dissents in opinion.

Orders and judgments affirmed, with costs to the respondent.