In the Matter of the Arbitration of Controversies between NECCHI SEWING MACHINE SALES CORP. and Elna Sewing Machine Co., Inc., Petitioners,

and

Henry A. CARL, doing business as Southwest Sewing Machine & Supply Company, Respondent.

No. 66 Civ. 1117.

United States District Court
S. D. New York.

Nov. 17, 1966.

Herbst & Herbst, New York City, for petitioners; Samuel B. Herbst, New York City, of counsel.

Lord, Day & Lord, New York City, for respondent; Woodson D. Scott, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge.

Petitioners, Necchi Sewing Machine Sales Corp. (Necchi) and Elna Sewing Machine Co., Inc. (Elna), move pursuant to N.Y.CPLR § 7503(a) and 9 U.S.C. § 4 for an order (1) directing respondent Southwest Sewing Machine & Supply Company (Southwest) to proceed to arbitration; and (2) staying Southwest from proceeding further in its action against Necchi and Elna now pending in the Oklahoma State courts. Apart from the Federal Arbitration Act, there is diversity jurisdiction here.

## I.

Southwest resists arbitration on the interrelated grounds of laches and waiver, based on the following facts: On January 8, 1955, the parties entered into a Distributors Wholesale Agreement, dated January 1, 1955, designating Southwest distributor of Necchi-Elna sewing machines and related products in Oklahoma and parts of Texas. On June 14, 1956, however, Necchi notified Southwest of the termination of the Agreement, effective July 14, 1956. On August 10, 1961, some five years later, Southwest commenced an action against Necchi and Elna for breach of the distributor's agreement in the District Court of Oklahoma County. On September 11, 1961, Necchi and Elna entered a "Special Appearance and Denial of Jurisdiction," and moved to quash service of process; the motion was amended on October 25, 1961, to add the claim that to subject them to jurisdiction upon the service made would deny due process under the federal constitution. Argument was not heard until February 4, 1963, and the court requested and received additional evidence on December 17, 1963. Also on that date Necchi and Elna amended their "Special Appearance and Denial of Jurisdiction" to add the contention that they had not been engaged in business in Oklahoma during the five years preceding commencement of suit. Finally, on February 2, 1966 the District Court of Oklahoma County denied the motion to quash and directed the defendants to plead or answer the petition within twenty days.

On February 18, 1966, Necchi and Elna filed a motion to make more definite and certain, and also a demurrer based upon a claim of lack of jurisdiction and failure to state a cause of action. These motions were denied by the

Oklahoma Court on February 24, 1966; defendants were again given twenty days to answer. This time appears to have been subsequently extended. In any event no answer has yet been interposed in the Oklahoma suit. The instant petition to compel arbitration was brought on before this court by order to show cause dated April 20, 1966.

II.

■ At the outset, it is clear that the Distributors Wholesale Agreement containing the arbitration clause with which we are concerned here is a "contract evidencing a transaction involving commerce" within the meaning of § 2 of the Federal Arbitration Act. 9 U.S.C. § 2. Since there is also diversity of citizenship here, an independent basis of federal jurisdiction, under the familiar principles of Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2 Cir. 1959), cert. dismissed by stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 360 F.2d 315 (2 Cir. 1966), cert. granted, 87 S.Ct. 202 (1966), federal substantive law is controlling, at least on the issue of the enforceability of the arbitration agreement.

■ The parties here, however, have stipulated that the distributors agreement shall be "construed, governed and interpreted in accordance with the laws of the State of New York." [1] Presumably on the issue of laches this stipulation is entitled to be given effect as a matter of federal choice-of-law under the

*Robert Lawrence* case, for as a general proposition parties are free to select the applicable law governing rights created by an arbitration agreement. Restatement (Second), Conflict of Laws § 354h (Tent. Draft No. 6, 1961). However, since I see no meaningful difference between the New York and Federal cases governing laches as a defense to a proceeding to compel arbitration, it is immaterial whether Federal or New York law applies.

III.

■ The question of whether the conduct of Necchi and Elna constitutes laches or waiver of the right to compel arbitration is evidently one for the court to decide. Even were I to assume that the broad arbitration clause here involved [2] requires that the issue of waiver—in the sense of an intentional relinquishment of the right to arbitrate by failure to comply with strict procedural requirements of the arbitration agreement—should be left to the arbitrator, see World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2 Cir. 1965), it is nevertheless clear that this court, sitting in equity on a motion to compel arbitration, must take into account equitable doctrines such as laches, which are raised as a bar to the petition. Reconstruction Finance Corp. v. Harrisons & Crosfield, 204 F.2d 366, 37 A.L.R.2d 1117 (2 Cir.), cert. den., 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953); Petition of Sociedad Armadora Aristomenis Panama, S.A., 244 F.Supp. 653 (S.D. N.Y.1965); American President Lines,

---

1. Paragraph 10 of the Distributors Agreement reads as follows: "This agreement is being executed in the City and State of New York and shall be construed, governed and interpreted in accordance with the laws of the State of New York. In the event any term or provision of this agreement shall be determined to be illegal, unenforceable or contrary to any applicable law or statute then such term or provision shall be deemed void and deleted herefrom, without affecting the legality or enforceability of any of the other terms or provisions of this agreement."

2. Paragraph 11 of the Agreement provides: "Any controversy, grievance or claim between the parties herein arising out of or related to this contract, its interpretation, performance, or breach, or out of the relationship between the parties or for any cause or reason whatsoever, shall be submitted for arbitration to the American Arbitration Association in the City of New York in accordance with its then rules and judgment upon the award rendered may be entered in any court having jurisdiction thereof."

Ltd. v. S. Woolman, Inc., 239 F.Supp. 833, 839 (S.D.N.Y.1964); Petition of Ropner Shipping Co., 118 F.Supp. 919 (S.D.N.Y.1954); Matter of New York Central R. R. (Erie R. R.), 30 Misc.2d 362, 213 N.Y.S.2d 15, 22–23 (Sup.Ct. 1961); N.Y.CPLR § 7502(b); Annot., Laches or Statute of Limitations as Bar to Arbitration Under Agreement, · 37 A.L.R.2d 1125 (1954); see Matter of Board of Education (Heckler Elec. Co.), 7 N.Y.2d 476, 199 N.Y.S.2d 649, 166 N.E.2d 666 (1960). Moreover, here the so-called waiver does not involve a failure to comply with procedural requirements of the arbitration clause as was evidently true in the *World Brilliance* case. See 342 F.2d at 365. On the contrary, the facts on which the claim of waiver is based are the same as those relied upon to sustain the claim of laches. In essence the claims of laches and waiver are simply two names for the same thing and both are for the court.

■ So viewed, I find the claims of laches and waiver to be without substance. It is no doubt true that "in the course of litigation, there comes a time when it would be manifestly unfair to permit one side to resort to arbitration over the protest of the other." Cavac Compania Anonima Venezolana de Administracion y Comercio v. Board For Validation of German Bonds, 189 F. Supp. 205, 209 (S.D.N.Y.1960). But that point has not been reached here. For as a general rule "the earliest point at which such preclusion may be found is when the other party files an answer on the merits." Chatham Shipping Co. v. Fertez Steamship Corp., 352 F.2d 291 (2 Cir. 1965); see Matter of Zimmerman v. Cohen, 236 N.Y. 15, 139 N.E. 764 (1923); Par Plumbing Co. v. Oxford Hall Corp., 43 Misc.2d 792, 252 N.Y.S.2d 341 (Sup.Ct.1964); Ted Stoppick & Co. v. Ernest Glick Co., 110 N.Y.S.2d 850 (Sup.Ct.1952) (no preclusion despite answer). Compare The Belize, 25 F.Supp. 663 (S.D.N.Y.1938), with Farr & Co. v. Cia Intercontinental de Navegacion De Cuba, S.A., 243 F.2d 342 (2 Cir. 1957).

■ Necchi's efforts to quash service and the filing of the demurrer did not constitute an answer which had the effect of joining issue on the claim subject to arbitration. See James v. Unknown Trustees, 203 Okl. 312, 220 P.2d 831, 20 A.L.R.2d 1077 (1960); Okl.Stat. tit. 12, § 263 (1961) (by implication). Indeed, the instant case closely resembles Haupt v. Rose, 265 N.Y. 108, 191 N.E. 853 (1934), where it was held that a party could seasonably seek arbitration though its previous motion to dismiss the complaint in a pending action had been denied.

■ Necchi and Elna certainly cannot be held responsible for the delay by Southwest in not commencing the Oklahoma action against them until more than five years after the alleged breach in 1956. It was Southwest, not Necchi and Elna, who, claiming a breach, had the laboring oar. Thereafter the efforts of Necchi and Elna to defeat the Southwest action were confined to asking for dismissal on jurisdictional grounds. Failing in that course, Necchi and Elna moved with promptness in this court to compel arbitration. They did not abandon their rights under the arbitration clause and seek to contest the merits of the claim before the Oklahoma courts or request affirmative relief going to the merits. Compare Par Plumbing Co. v. Oxford Hall Corp., 43 Misc.2d 792, 252 N.Y.S.2d 341 (Sup.Ct.1964).

In short, the conduct of the petitioners here fully reflected the "conscience, good faith, and reasonable diligence" necessary to request invocation of the powers of an equity court. McKnight v. Taylor, 42 U.S. (1 How.) 161, 168, 11 L.Ed. 86 (1843). Necchi and Elna have not "inexcusably slept on [their] rights so as to make a decree against the defendant unfair." Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). Accordingly, Southwest has not sustained its burden of demonstrating "extraordinary circumstances" which are a necessary ingredient of a laches, and in this case a waiver, defense. Reconstruction Finance Corp. v. Harri-

sons & Grosfield, 204 F.2d 366, 370, 37 A.L.R.2d 1117 (2 Cir.), cert. den., 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953); see Smith v. Sinclair Refining Co., 257 F.2d 328, 329 (2 Cir. 1958); Nortuna Shipping Co. v. Isbrandtsen Co., 231 F.2d 528 (2 Cir.), cert. den., 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956); Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 126 F.2d 978 (2 Cir. 1942). For these reasons the motion to compel arbitration is granted.

## IV.

The application of Necchi and Elna for an order staying Southwest from proceeding with the Oklahoma action raises questions which are not without their difficulty, particularly in view of the failure of the parties to discuss such questions in their briefs.

Plainly authority to stay the Oklahoma action is not to be found in § 3 of the Federal Arbitration Act, 9 U.S.C. § 3. Stays are authorized under that provision only in suits brought in the federal court on issues referable to arbitration, and then only by application to "the court in which such suit is pending."[3] See Wilson & Co. v. Fremont Cake & Meal Co., 77 F.Supp. 364, 369 (D.Neb. 1948). Section 3 is therefore inapplicable in this proceeding.

■ Thus we must look to the general powers of the court sitting in equity to issue such a stay. Authority to enjoin the Oklahoma action may be found in 28 U.S.C. § 2283, which limits generally the circumstances in which a federal court may stay a state court proceeding and delineates the exceptions under which such stays may be granted.[4] Although a stay in this case is most certainly not "expressly authorized by Act of Congress,"[5] it does appear that one is necessary to "protect or effectuate" the court's judgment within the meaning of § 2283. That specific exception, passed for the purpose of overcoming the holding of Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), was designed primarily to prevent relitigation in state courts of matters which have already been decided by a federal court. 1A Moore, Federal Practice ¶ 0.208 [3.–3] (1965); see Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp., 244 F.2d 394 (5 Cir. 1957); National Labor Relations Board v. Underwood Machinery Co., 198 F.2d 93 (1 Cir. 1952).

■ I have held that the disputes here involved are referable to arbitration. The decree to be entered in this proceeding will direct the parties to proceed to arbitration. Any further proceedings in Oklahoma to enforce the claims to be arbitrated would be inconsistent with the decision and the decree of this court. Consequently in order to "protect" and "effectuate" that decree Southwest will be stayed from pursuing its action in Oklahoma until the completion of the arbitration proceedings.

■ Moreover, it should be noted that the New York law authorizes a stay,

3. 9 U.S.C. § 3 provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

4. "§ 2283. *Stay of State court proceedings.*

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

5. Contrast 11 U.S.C. §§ 29(a), 203(s) (2) (bankruptcy); 28 U.S.C. § 2251 (habeas corpus); 28 U.S.C. § 2361 (interpleader).

pending arbitration, of an out-of-state action. See Matter of S. M. Wolff Co. (Tulkoff), 9 N.Y.2d 356, 214 N.Y.S.2d 374, 174 N.E.2d 478 (1961); H. M. Hamilton & Co. v. American Home Assurance Co., 21 A.D.2d 500, 251 N.Y.S.2d 215 (1st Dep't); aff'd per curiam, 15 N.Y.2d 595, 255 N.Y.S.2d 262, 203 N.E.2d 649 (1964); Matter of Gold (American Eutectic Welding Alloys Sales Co.), 11 A.D. 2d 772, 205 N.Y.S.2d 112 (2d Dep't 1960) (Mem.); N.Y.CPLR § 7503. It is true that the provision in the Distributors Agreement directing that New York law governs on issues of interpretation [6] cannot be invoked to compel this court to apply the local remedies of New York, since undoubtedly as a matter of federal choice-of-law the "method of enforcement of an arbitration agreement is determined by the local law of the [federal] forum." Restatement (Second), Conflict of Laws § 354i (Tent.Draft No. 6, 1961). However, the New York cases demonstrate the necessity for a stay to protect a judgment directing arbitration. As was said in Matter of S. M. Wolff Co. (Tulkoff), 9 N.Y.2d 356, 361, 214 N.Y.S. 2d 374, 377, 174 N.E.2d 478, 480 (1961):

> "The purpose of a stay is to enforce a contractual obligation to arbitrate by preventing other actions or proceedings inconsistent with that obligation. If our courts may only prevent inconsistent actions or proceedings in the courts or administrative agencies of this State, they will only be providing partial enforcement of the promise to arbitrate; if the court's power to stay was thus limited the obligation of the contract could easily be frustrated by the prosecution of actions or proceedings in another jurisdiction."

These reasons are equally persuasive in the case at bar.

The motion to compel arbitration and for a stay is granted.

Settle order on notice.