In the Matter of the Arbitration between
**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Petitioner,**

v.

**Helen Echo HAYDU, Respondent.**

**No. 79–1088–Civ.–JLK.**

United States District Court,
D. Florida.

Order Granting Petition to Compel
Arbitration July 11, 1979.

On Emergency Motion for Injunction
Jan. 11, 1980.

N. James Turner, Walton, Lantaff, Schroeder & Carson, Miami, Fla., for petitioner.

Bill Shuford, Jr., Bartel & Shuford, P. A., Miami, Fla., for respondent.

JAMES LAWRENCE KING, District Judge.

This matter arose upon the petition of Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") to compel arbitration pursuant to the terms of agreements executed with Helen Echo Haydu on September 4, 1975 and July 19, 1977.

After carefully reviewing the record, the court notes, *inter alia*, that since there is diversity of citizenship between the parties under 28 *U.S.C.* § 1332, it may entertain the instant petition under 9 *U.S.C.* § 4.

The respondent, Ms. Haydu, has not contested the petitioner, Merrill Lynch's contention that the instant arbitration agreements, executed in connection with a stock brokerage account, involve "commerce" within the meaning of 9 *U.S.C.* § 2, *Wilko v. Swan,* 346 U.S. 427, 430, 74 S.Ct. 182, 98 L.Ed. 168 (1953), so that the court may enforce the agreements under 9 *U.S.C.* § 4.

While agreements to arbitrate future federal securities law violations are unenforceable, *e. g., Wilko v. Swan, supra* at 438, 74 S.Ct. 182, it does not appear from the respondent's state court Complaint (Ex. "A", attached to the April 27, 1979 "motion to dismiss") that the dispute between parties involves violations of federal securities laws. In his February 17, 1979 Order of Remand, the Hon. Joe Eaton, United States District Judge, found that the Complaint failed to invoke the Securities Act of 1933. This court agrees. And, since respondent filed her Complaint in state court, it is clear that no violations of the Securities Act of 1934 are involved in the instant dispute, for

the state court lacks jurisdiction to hear suits for violations of this latter Act. 15 U.S.C. § 78aa; *Moran v. Paine, Weber, Jackson & Curtis,* 279 F.Supp. 573 (W.D.Pa. 1967), aff'd, 389 F.2d 242 (3d Cir. 1968). That is, it appears from the record that the 1934 Act claims are not part of the instant dispute for, in her efforts to resolve this dispute, respondent sued in a court which lacked jurisdiction to hear 1934 Act claims. This court therefore finds that the instant dispute is not nonarbitrable under the holding in *Wilko v. Swan, supra,* for federal securities law violations are not involved herein.

The respondent also argues that she did not understand the effect of the July 19, 1977 "Standard Option Agreement" which she signed. She additionally states in her affidavit that she was not given the opportunity to read the "Standard Option Agreement" because she was distracted by a "high-pressure sales talk" delivered by a representative of Merrill Lynch.

■ As for these arguments, the court notes that respondent has not attacked the initial September 4, 1975 agreement. Additionally, the doctrine of unilateral mistake would prevent the court from granting relief from the agreement as a result of the mere failure to comprehend its import. *E. F. Hutton & Co. v. Schank,* 456 F.Supp. 507, 511 (D.Utah 1976). In any event, these attacks on the agreement should be ruled on by the arbitrator, rather than by the court. The court bases this conclusion on *Prima Paint Corp. v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) the holding of which was succinctly explained in a Seventh Circuit Court of Appeals opinion, in which Circuit Justice John Paul Stevens joined:

> The attack on validity [of the contract containing the arbitration clause] in *Prima Paint* . . . was broad gauged, asserting that the contract as a whole was voidable from its inception for fraud in the inducement. That equitable defense, if sustained, would have invalidated the entire contract, carrying the arbitration clause down with it. Nonetheless,

the Supreme Court ruled that the defense must be adjudicated by the arbitrator, not the court.

*Internat'l U. of Operating Engineers v. Morse,* 529 F.2d 574, 578 (7th Cir. 1976) (Footnote omitted). The respondent's instant claim that she was deprived of the opportunity to read the "Standard Option Agreement" is similarly "broad gauged", and must be decided by the arbitrator.

■ The court is therefore "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . ", 9 U.S.C. § 4, so that the court does now

ORDER and ADJUDGE that the petition to compel arbitration is hereby granted. The parties shall proceed to arbitration in accordance with the terms of the agreements *sub judice.* Such arbitration proceedings shall be conducted within the Southern District of Florida. 9 U.S.C. § 4. The court does further

ORDER and ADJUDGE that, having granted the petition to compel arbitration, the case is hereby dismissed, except that the court shall retain jurisdiction to enforce the terms of this Order.

## On Emergency Motion For Injunction

This matter arose upon the emergency motion of the petitioner, Merrill Lynch, Pierce, Fenner & Smith, Inc., (hereinafter "Merrill Lynch"), to enjoin the respondent, Helen Echo Haydu, from prosecuting her state court action, *Haydu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 79–583 (CA–05, filed Jan. 10, 1979) (hereinafter "state court action").

In support of its emergency motion, Merrill Lynch contends that the state court action must be enjoined to protect and effectuate this Court's order of July 11, 1979. In opposing the motion, the respondent argues that this Court's order of July 11 was "effectively barred and prohibited" by a prior state court order under doctrines of res judicata and collateral estoppel. The respondent also raises issues of concurrent jurisdiction and abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The July 11, 1979 order compelled arbitration of the respondent's underlying claim against Merrill Lynch pursuant to 9 U.S.C. § 4. That order is now on appeal to the Fifth Circuit and has been stayed pending appeal. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, No. 79–2993 (5th Cir., Dec. 17, 1979) (order granting stay pending appeal and relinquishing jurisdiction to district court). The Fifth Circuit panel has also relinquished jurisdiction to this Court "for the restricted purpose of its entertaining the appellee's application for injunctive relief and determining whether such is warranted and is permissible in effectuation or protection of its order, see 28 U.S.C. Section 2283." *Id.*

■ Specifically, the court of appeals has not remanded the July 11, 1979 order for reconsideration. Hence, respondent's arguments on the validity, propriety, or wisdom of the July 11 order are inapposite. It would be a usurpation of Fifth Circuit panel's retained appellate jurisdiction for this Court, in effect, to treat the present motion as an occasion to reconsider the July 11 order once again on its merits. Moreover, the respondent's arguments were urged upon this Court upon her motion for reconsideration on July 13, 1979 and were rejected at that time.

The Court concludes that the following three issues are properly present for its consideration: (1) whether the emergency motion falls within the exception to the anti-injunction statute "to protect or effectuate [the Court's] judgments," 28 U.S.C. § 2283; (2) if so, whether the general prerequisites for the granting of an injunction are present; and (3) if so, whether the injunction should be denied in the interests of federalism.

I. *Protection and Effectuation of the July 11 Order*

At the outset, the Court notes that there is no question but that the underlying controversies that form the basis of the July 11 Order and the state court action are the same. Indeed, the respondent states: "The parties and issues involved in both the State and Federal actions here at issue are identical." Respondent's Response and Memorandum in Opposition at 2. *See also* Emergency Motion at 2.

Also as an initial matter, there seems little question that the provisions of 28 U.S.C. § 2283 apply to this motion. This Court is obviously a "court of the United States" and the petitioner is seeking "an injunction to stay proceedings in a state court." Thus, this Court is prohibited from granting such an injunction unless one of the exceptions to the anti-injunction statute applies. Both parties agree that only the third exception permitting a federal court "to protect and effectuate its judgments" is pertinent.

■ The July 11 order, as a final, appealable order of this Court, clearly constitutes a judgment for the purposes of the exception to the anti-injunction statute. *See* Wright, Miller & Cooper, 17 *Federal Practice and Procedure* § 4226 at 346–47. Therefore, the questions under the anti-injunction statute may be reduced to the single issue of whether a stay of the state court proceedings would protect or effectuate the July 11 order. Indeed, this issue was the very one noted in the appeals court order relinquishing jurisdiction.

The July 11 order directed the parties to take their dispute to arbitration pursuant to the terms of their agreement to do so. Although at common law arbitration agreements were not enforceable, arbitration today is regarded as a convenient and relatively inexpensive alternative to litigation. This advantage to the parties and the advantage of relieving congestion in the courts prompted the passage of the United States Arbitration Act of 1925, the successor provisions of which are codified at 9 U.S.C. §§ 1–14. *See, e. g., Seaboard Coast Line Railroad Co. v. National Rail Passenger Corp.*, 554 F.2d 657, 660 (5th Cir. 1977) (*per curiam*) (policy to relieve congestion in the courts); *Aerojet-General Corp. v. American Arbitration Association*, 478 F.2d 248, 251 (9th Cir. 1973) (policy of speedy disposition of disputes without expense and delay

of court proceedings). All of these benefits of arbitration are undercut if court proceedings are not halted after arbitration has been ordered. *See, e. g., Burger Chef Systems, Inc. v. Baldwin, Inc.*, 365 F.Supp. 1229, 1233–34 (S.D.N.Y.1973); *Network Cinema Corp. v. Glassburn*, 357 F.Supp. 169, 172 (S.D.N.Y.1973); *Necchi Sewing Machine Sales Corp. v. Carl*, 260 F.Supp. 665, 669 (S.D.N.Y.1966).

■ The instant motion presents an even stronger situation for a stay than the three cases just cited above. In this case, the arbitration order has been stayed on appeal while the state court action continues apace. Unless the July 11 order is to become a nullity *sub silentio*, the state court action must be stayed. The July 11 order cannot be treated as if it reached the conclusion diametrically opposed to the conclusion it did reach.

The Court concludes that a stay of the state court action would protect and effectuate the Court's order of July 11, 1979.

## II. *Injunction Prerequisites*

■ The fact that the anti-injunction statute does not prohibit an order by this Court staying the state court action does not mean that an injunction should necessarily issue. The request for such an injunction requires the invocation of this Court's equity powers and therefore must be tested against the traditional equitable tests of threatened irreparable harm for which the petitioner has no adequate remedy at law. *See* Wright, Miller & Cooper, *supra* at 347–51.

For the instant motion, the alleged irreparable harm is the prospect that the petitioner will have to engage in discovery and, indeed, go to trial over a controversy for which this Court ordered arbitration. Clearly, this harm is irreparable since, as discussed above, the advantages of arbitration pursuant to an agreement of the parties are forever dissipated when it is peremptorily supplanted by litigation.

■ Whether the petitioner has an adequate remedy at law is somewhat less clear cut. A number of courts have enjoined state court proceedings in the same order in which arbitration was compelled. *See Burger Chef, supra; Network Cinema, supra; Necchi Sewing, supra.* The July 11, 1979 order did not do so, in part because the Court believed that there was no need to do so. The petitioner could raise this Court's order in the state court action and thereby obtain the sought after result through a remedy at law. However, the petitioner has diligently sought in the state courts to stay the state court proceedings, to no avail. Apparently, at this point in time, the petitioner in fact has no further adequate remedy at law. Hence, the Court concludes that this equitable test has been met. After careful consideration, the Court further concludes that all other traditional prerequisites to equitable relief have been met.

## III. *Considerations of Federalism*

■ The respondent properly calls to the Court's attention the federalism considerations which must be faced whenever a federal court entertains a motion to enjoin a state court proceeding. These considerations might be regarded as arising either from an extension of the *Younger* abstention doctrine—*see Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971), and its numerous progeny—or from the earlier recognized needs of concurrent judicial systems, *see Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941). No matter how these federalism considerations are characterized, they must cause any federal court to be circumspect when considering a motion to enjoin state court proceedings. *See, e. g., Southern California Petroleum Corp. v. Harper*, 273 F.2d 715, 718–20 (5th Cir. 1960). *But c.f. Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 300–02, 306–07 (5th Cir. 1979) (*Younger* does not apply to all civil litigation; *Younger* does not apply to an order protecting an extant prior federal injunction). Indeed, the federal court's caution should be particularly great where, as here, the record reflects that the state court has considered and been troubled by the conflict between the two proceedings.

Nevertheless, two other considerations persuade this Court that this case presents one of those extraordinary situations in which the Court should not refrain from issuing the requested injunction. First, the Court notes that the arbitration right at stake is a substantive federal right based on the federal power to regulate interstate commerce. *See generally*, Wright, Miller & Cooper, *supra* at § 3569. Moreover, the petitioner has done all it can in the state court to vindicate its right to arbitrate and be free from the burden of further litigation,[1] a right which it shall lose forever unless the state proceedings are stayed before further costly discovery next week and a trial scheduled for January 21, 1980.

Second, the considerations of federalism are premised, in part, on the desire to avoid needless friction between federal and state courts. This Court can think of no greater prospect for friction between the two judicial systems than the *de facto* ability of the state courts to reverse federal court decisions on arbitration by forcing a party with a federally-decided right to arbitrate to litigate.

IV. *Conclusion*

For the reasons outlined above, the Court concludes that the state court action should be enjoined pursuant to 28 U.S.C. § 2283. The Court recognizes that both parties have been earnestly seeking a resolution of their dispute, albeit the petitioner by arbitration and the respondent by litigation. Therefore, the Court recommends that both parties seek an expedited hearing of the appeal now before the Fifth Circuit.

It is hereby

ORDERED AND ADJUDGED that the respondent, Helen Echo Haydu, is enjoined from further discovery in (including, but not limited to, depositions presently scheduled for dates following the date of this order) and further prosecution of the state court action captioned "*Helen Echo Haydu, Plaintiff v. Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Defendant*", Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, Case No. 79–583 (CA–05). Respondent Haydu shall not be enjoined from filing any motion in said state court action requesting a stay of proceedings therein to comply with this Order. It is further

ORDERED AND ADJUDGED that this Order shall remain in effect until further order of this Court, further order of the Fifth Circuit Court of Appeals, or the completion of the arbitration directed by this Court on July 11, 1979 in the order herein attached and which constitutes part of the present Order. It is further

ORDERED AND ADJUDGED that the respondent's request for a security bond pursuant to Federal Rule of Civil Procedure 65(c) is denied since the present Order of the Court is neither a temporary restraining order nor a preliminary injunction. It is further

ORDERED AND ADJUDGED that the limited jurisdiction granted this Court is hereby returned to the Fifth Circuit Court of Appeals.

---

1. Merrill Lynch originally had a motion to compel arbitration pending before the state trial court. Following the entry of this Court's July 11 order, Merrill Lynch withdrew its motion to compel and moved the state court to abate its proceedings pending arbitration under the July 11 order or that order's appeal. The motion to abate was denied by the state trial court on November 7, 1979, from which Merrill Lynch took an appeal. Although the appeal of the state trial court's November 7 order is presently pending in the state Third District Court of Appeal, the state appeals court has refused to stay the trial proceedings. Emergency Motion at 2 n.2.