### Gronstadt *v*. Withoff and others.

*'Circuit Court, S. D. New York. July 30, 1884.)*

**DEMURRAGE—CARGO—PLACE OF DISCHARGE—DELAY—RESPONSIBILITY.**

In a bill of lading for empty petroleum barrels there was a condition in regard to demurrage, and thereafter the words "all other conditions as per charter-party," which charter-party contained the provision that "the cargo should be discharged in the same berth where the rails should be discharged." In an action for demurrage against consignees, who, upon arrival of vessel, did not provide a "lighter," the wharf-owners objecting to receive petroleum barrels, *held*, that the libelant was not at fault, because, in selecting a place for the delivery of the cargo in conformity with the contract of the parties, he selected one which was not altogether convenient for the respondents; that the lay days began to run after the ship reached the berth to which she was directed by the consignees of the rails; and that the detention of the ship was caused by respondents' delay.

In Admiralty.

*Beebe, Wilcox, & Hobbs,* for libelant

*E. S. Hubbe,* for claimants.

WALLACE, J. The libelant, as master of the ship Petropolis, sues the consignees of part of her cargo for demurrage. The general cargo was shipped at Pillau under a charter-party between the vessel-owners and one Nordt, which provided, among other things, that the cargo might consist of empty petroleum barrels and rails to be carried to New York, and also provided that the cargo should be discharged in the same berth where the rails should be discharged. The respondents' barrels were shipped under a bill of lading which, among other things, provided that the barrels should be taken free from on board the vessel in four running days, with demurrage at £10 per day for longer detention, and contained a clause, "all other conditions as per charter-party."

The vessel arrived at the port of New York on May 21, 1880, and upon the request of the owner of the iron rails, which was the major part of the cargo, went to the Erie basin to discharge her cargo, and not being able to reach the wharf moored along-side another vessel. The barrels were above the rails. She remained practically in this position until the afternoon of May 31st, waiting to reach the

wharf. The respondents having been notified on the 25th of her arrival, obtained an order for the delivery of the barrels on May 26th, from the vessel's agent, and being informed that the vessel was at the Erie basin, said they would send a lighter. The wharf-owner objected to receiving empty petroleum barrels on their wharf. On the 27th respondents notified the vessel's agent, if there was no lighter along-side the vessel, to put the barrels on the dock and give them notice. He replied he was willing to put the barrels on the dock if the respondents would arrange with the dock-owners to receive them there, and at the same time notified respondents he should hold them responsible for detention if they did not get the barrels out by the night of the 29th. Nothing more was done by the respondents until the morning of May 31st, when they sent a lighter, and the barrels were delivered on her. Four days were occupied in delivering to the lighter.

The bill of lading adopted all the conditions of the charter-party not inconsistent with its own terms. It has been frequently held that when it is sought to charge a consignee or indorsee of a bill of lading with liability upon the conditions of a charter-party, there must be a plain reference to the charter-party in the bill of lading, and a plain indication of an intention to incorporate them into the contract. *Young* v. *Moeller*, 5 El. & Bl. 755; *Chappel* v. *Comfort*, 31 L. J. C. P. 58; *Gray* v. *Carr*, L. R. 6 Q. B. 522; *Russell* v. *Niemann*, 33 L. J. C. P. 358. Here the language of the charter-party is unambiguous and explicit, and it cannot be doubted is sufficient to adopt the conditions of the charter-party into the bill of lading. *Smith* v. *Sieveking*, 4 El. & Bl. 945; *Wegener* v. *Smith*, 24 L. J. C. P. 25; *Davis* v. *Wallace*, 3 Cliff. 130. By thus adopting the terms of the charter-party not inconsistent with those of the bill of lading, the consignees of the barrels agreed with the carrier that their part of the cargo might be delivered at the same berth where the iron rails should be delivered.

In the absence of such a stipulation it is probable that the charterer would have had the right to select the place of delivery, but it is clear that the respondents could not have exercised that right without the concurrence of the owners of the rest of the cargo, and that the master's duty towards them would be fulfilled if he selected a suitable and convenient place for the delivery of the whole cargo.

Under the present contract, however, it seems reasonable to conclude that it was the intention of the parties that the master should consult the covenience of the consignees of the rails in the selection of the place of delivery. This is suggested, not only by the language of the contract, but by the situation of the parties, and their relations to the cargo and to each other. The cargo was to be delivered at a port where it is well known there are serious difficulties in landing either iron or petroleum barrels in the usual places for landing general cargoes. Many wharf-owners object to receiving iron upon their wharves on account of its weight, and the danger consequent thereon,

and many also object to receiving empty petroleum barrels, because of their combustible character. And this construction of the meaning of the contract is enforced by that placed upon it by the parties themselves, all of whom seemed to concede that the master had properly proceeded to the place where he did proceed, and that under the circumstances it was the duty of the respondents to provide a lighter to receive their barrels. If an instrument is ambiguous, and both parties have acted upon a particular construction of it, that construction, if in itself admissible, will be adopted by the court. *Chicago* v. *Sheldon*, 9 Wall. 50, 54; *Jackson* v. *Perrine*, 35 N. J. Law, 137; *Stone* v. *Clark*, 1 Metc. 378; *Forbes* v. *Watt*, L. R. 2 Sc. & D. 214.

The libelant followed the instructions of the consignees of the iron, and proceeded to a place of discharge within the port where the iron could be delivered on the dock, but where the dock-owners would not permit the petroleum barrels to be landed. No objection was made by the respondents when it was suggested that they should provide a lighter; and they undertook to obtain one. They knew that the iron could not be discharged until their barrels were removed. In consequence of their delay the lay days expired.

It must be held that the libelant was not in fault because in selecting a place for the delivery of the cargo in conformity with the contract of the parties he selected one which was not altogether convenient for the respondents; that the lay days began to run after the ship reached the berth to which she was directed by the consignees of the rails; and that the detention of the ship was caused by respondents' delay.

A decree for four days' demurrage, at £10 per day, and interest, is directed, with costs to the libelant in the district court, and the costs of this appeal.