## THE SILVERBROOK.

(District Court, E. D. ˙Louisiana.  March 7, 1927.)

No. 18509.

1. **Shipping** ⬅39(4)—**Terms of charter party may be incorporated into bills of lading by clear reference.**

Where bills of lading contain a plain reference to the charter party and a clear indication of intention to incorporate the terms of the charter party into the contract, such provision is binding on the parties, including consignees who accept and indorse the bills.

2. **Shipping** ⬅39(2)—**Provision in charter party that it shall be construed in accordance with laws of particular country merely supplies rule of construction and does not limit remedies.**

A provision in a charter party that it shall be construed in accordance with the laws of a particular country does not limit the parties with respect to remedies, but merely supplies a particular rule of construction in case of dispute as to the meaning of its terms.

3. **Arbitration and award** ⬅6—**Agreement to arbitrate relates to remedy and enforceability depends on law of forum.**

Agreement in contract for arbitration of disputes thereunder relates to remedy, and whether enforceable is determined by law of forum.

4. **Shipping** ⬅39(7)—**Federal arbitration act applies only to agreements which may be carried out in United States (Arbitration Act 1925 [Comp. St. §§ 1251½—1 to 1251½—15]).**

It was the purpose of Arbitration Act 1925 (Comp. St. §§ 1251½—1 to 1251½—15) to abolish the old rule under which federal courts of admiralty refused to enforce arbitration agreements, but it applies to, and directs enforcement of, only such arbitration agreements as may be carried out in the United States within the jurisdiction and under the control of a federal court, and a provision of a charter party that any dispute thereunder shall be settled by arbitration in London by arbitrators chosen by the parties in the manner provided by the English Arbitration Act, is not within its provisions.

In Admiralty. Suit by the Ayer & Lord Tie Company, Incorporated, against the steamship Silverbrook; the Mountain Oil & Refining Company, claimant. On motion by claimant for stay of suit and reference of issue to arbitration. Denied.

Denegre, Leovy & Chaffe and Jas. Hy. Bruns, all of New Orleans, La., for libelant.

George H. Terriberry (of Terriberry, Young, Rault & Carroll), of New Orleans, La., for claimant.

BURNS, District Judge. The Mountain Oil & Refining Company, an American corporation, claimant herein, has applied by a

motion for a stay of these proceedings on the ground that the contract (bills of lading) sued upon, including the charter party incorporated by reference therein, constitutes a maritime transaction or contract involving commerce, within the terms of the United States Arbitration Act, approved February 12, 1925 (43 Stat. 883 [Comp. St. §§ 1251¼—1 to 1251⅘—15]).

This seems to be the first case presented to a court of the United States since the Arbitration Act was passed by Congress. Libelant, Ayer & Lord Tie Company, Incorporated, an American corporation, holder of bills of lading for a bulk shipment of creosote, commenced the suit by filing its libel in rem against the American steamship Silverbrook for shortage and damage to cargo which had been shipped and received aboard the vessel in good condition. The bills of lading had been purchased by it for value from the New York Trust Company of New York City, by virtue of which it became the owner of the cargo. Attached to the libel were two bills of lading, showing the shipment to have been made in two parts, one by E. A. Gibson & Co., Limited, as agents, dated in London, July 15, 1926, and the other by the S. A. Agence, Maritime Minne, dated Selzaete, July 7, 1926.

Each bill of lading contains a clause reading: "To be delivered unto order of the New York Trust Company of New York at Port Chalmette, New Orleans, on payment of freight and other conditions as per charter party. * * * All conditions, exceptions, and exemptions from liability, including the negligence clause as per charter party, dated June 25, 1926, are incorporated herein." The charter party, also attached to the libel, is dated at London and designated as a "tank steamer creosote charter party" between the Mountain Oil & Refining Company, Incorporated, as owners, and Charles Page & Co., Limited, of London, stipulating for a voyage from Selzaete and London to Port Chalmette, New Orleans, the twenty-sixth stipulation of which reads: "Any dispute arising out of or in connection with this charter is to be settled by arbitration in London by two arbitrators (one to be named by each party), and an umpire, in manner provided by the Arbitration Act, 1889, or any statutory modification thereof, and otherwise by the law of England. For the purpose of enforcing awards this agreement may be made a rule of court. Both arbitrators and umpire shall be commercial men."

[1] The settled law is that where bills of lading contain a plain reference to the charter

18 F.(2d)—10

party and a clear indication of an intention to incorporate the terms of the charter party into the contract, such provision is just as binding on the parties, including the consignees who accept and indorse same, as if the bill of lading itself had expressed by repetition the terms of the charter party. Gronstadt v. Withoff et al. (C. C.) 21 F. 253; The Sandfield (D. C.) 79 F. 371. It was also well settled, before the passage of the United States Arbitration Act, that arbitration agreements of this character were void and not enforceable in the federal courts, sitting as courts of admiralty.

[2] The decision in the case entitled The Eros (D. C.) 241 F. 186, was to the effect that a provision in a charter party that it shall be construed in accordance with the laws of a particular country does not limit the parties with respect to remedies, but simply supplies a particular rule of construction in case of dispute as to the meaning of its terms; and also to the effect that a provision of a charter party that any dispute thereunder shall be submitted to arbitration relates to the remedy only, and its effect is to be determined by the law of the forum; that under the law, in the American admiralty courts, such a clause cannot deprive the parties of the right to appeal to the court.

[3] In the case entitled U. S. Asphalt Ref. Co. v. Trinidad Lake Petroleum Co. (D. C.) 222 F. 1006, the decision was to the effect that an agreement in a contract that differences arising thereunder shall be submitted to arbitration relates to the remedy, and the question whether such an agreement was enforceable was governed by the law of the forum; and also to the effect that a provision in a charter party made in London that "any dispute arising under this charter shall be settled in London by arbitration, * * * and this decision shall be binding upon both parties," was an agreement for arbitration applied to the whole contract, and, while valid under the English Arbitration Act of 1889, it was void in a federal forum. In this opinion Judge Hough (then District Judge, Southern District of New York) carefully reviewed the existing jurisprudence and concluded that the doctrine was settled by the Supreme Court; that is, that where such clauses in contracts operate a complete ouster of the jurisdiction of the courts, they should be held void in a federal court. In the course of this opinion it was strongly suggested that the rule could not be sustained in reason; that it resulted from an ancient judicial jealousy of jurisdiction, of English origin.

In Red Cross Line v. Atlantic Fruit Co., 264 U. S. 125, 44 S. Ct. 278 (68 L. Ed. 582), where the Supreme Court had under consideration an Arbitration Law of the state of New York (Laws 1920, c. 275), which was enacted in 1920, the rule was recognized, though the state statute then under consideration was sustained. The opinion concludes in the following language: "As the constitutionality of the remedy provided by New York for use in its own courts is not dependent upon the practice or procedure which may prevail in admiralty, we have no occasion to consider whether the unwillingness of the federal courts to give full effect to executory agreements for arbitration can be justified." In a footnote the court refers specifically to the following decided cases as indicia to the rule: The Atlanten, 252 U. S. 313, 40 S. Ct. 332, 64 L. Ed. 586; U. S. Asphalt R. Co. v. Trinidad Lake P. C. (D. C.) 222 F. 1006; Aktieselskabet Korn-og, etc. v. Rederiaktiebolaget, etc. (C. C. A.) 250 F. 935, Ann. Cas. 1918E, 491; Atlantic Fruit Co. v. Red Cross Line (D. C.) 276 F. 319.

[4] Report No. 96, submitted by the congressional committee on the judiciary, on the bill which was designated as H. R. 646, shows that the Congress took particular notice of the state of the jurisprudence relating to arbitration agreements generally. The report reads in part:

"The purpose of this bill is to make valid and enforceable agreements for arbitration contained in contracts involving interstate commerce or within the jurisdiction or admiralty, or which may be the subject of litigation in federal courts. * * * An arbitration agreement is placed upon the same footing as other contracts where it belongs. * * * The need for the law arises from an anachronism of our American law. Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction. This jealousy survived for so long a period that the principle became firmly imbedded in the English common law and was adopted with it by the American courts. The courts have felt that the precedent was too firmly fixed to be overturned without legislative enactment although they have frequently criticised the rule and recognized its illogical nature and the injustice which results from it. The bill declares simply that such agreements for arbitration shall be enforced, and pro-

vides a procedure in the federal courts for their enforcement," etc.

The act, as finally adopted, is entitled "An act to make valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the states or territories or with foreign nations." It is plain enough that Congress intended to abolish the old rule, established in the jurisprudence, by which the federal courts refused to enforce arbitration agreements. But, however, the act seems to contemplate only such arbitration agreements as would be or could be carried out in the United States, within the jurisdiction of and under the control and orders of the United States courts, and therefore it provided in specific and limited terms the character of agreements by which, and the manner in which, parties can provide for and proceed with arbitration. Substantially the pertinent provisions of the act are as follows:

Section 1 (Comp. St. § 1251⅘—1) defines the terms "maritime transactions" and "commerce," and excepts from its operation contracts of employment of seamen, railroad employees, or any other class of workers in foreign or interstate commerce.

Section 2 (Comp. St. § 1251⅘—2) provides that a written provision in any maritime transaction, or a contract evidencing a transaction involving commerce, to settle by arbitration a controversy thereafter arising out of such contract or transaction, etc., shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 3 (Comp. St. § 1251⅘—3) provides that if any suit or proceeding be brought in any court of the United States upon any issue referable to arbitration under such agreement, such court, upon being satisfied that the issue is referable to such arbitration, upon the application of one of the parties, shall stay the trial of the action until such arbitration is had.

Section 4 (Comp. St. § 1251⅘—4) provides that the party aggrieved by the failure, neglect, or refusal of another to arbitrate under such agreement "may petition any court of the United States which, save for such agreement, would have jurisdiction" for an order "directing that such arbitration proceed in the manner provided for in such agreement: * * * Provided, that the hearing and proceedings under such agreement shall be within the district in which the petition for an order directing such arbitration is filed."

Following this significant mandatory provision as to venue and jurisdiction, provision is made in the same section for the summary trial in such court of any issue raised as to the making of the agreement or the failure, neglect, or refusal of one of the parties to perform it.

Section 5 (Comp. St. § 1251⅘—5) prescribes the method of appointing arbitrators or umpires. This is to be done by the court in certain contingencies.

Section 7 (Comp. St. § 1251⅘—7) provides for the summoning of witnesses and for their compulsory attendance before the arbitrators, by contempt proceedings, upon "petition" to "the United States court in and for the district in which such arbitrators" are sitting, "in the same manner now provided for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States."

Section 8 (Comp. St. § 1251⅘—8) specifically prescribes a distinct rule for admiralty cases: "That if the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

Section 9 (Comp. St. § 1251⅘—9) provides for the confirmation of awards. When no court is specified, then such confirmation shall be made by "the United States court in and for the district within which such award was made." Notices are to be served by the marshal of any district in like manner as other process of the court.

Sections 10 and 11 (Comp. St. §§ 1251⅘—10, 1251⅘—11) provide for the vacating of awards, and for the modifying or correcting of same, and in both sections it is specifically provided that this shall be done in the "United States court in and for the district wherein the award was made."

My conclusion seems fortified by the terms of each of these sections, which clearly contemplate what in effect amounts to a judicial enforcement of specific performance of arbitration clauses in contracts involving commerce as defined by the act by the courts of the United States, necessarily, however, confining these courts within the legitimate bounds of their territorial jurisdiction. Indeed, the qualifying provision of section 4 alone seems to compel the conclusion stated, since the hearings and proceedings under such arbitration agreements "shall be within the district in which the petition for an order directing such arbitration [shall be] filed."

The courts of the United States are of limited jurisdiction, being confined to the specific grants thereof by Congress. Although the basis of jurisdiction in this case is a cause of action otherwise justiciable in admiralty, and begun by a libel and seizure of a vessel according to the usual course of admiralty proceedings, and therefore of the class contemplated by section 8 of the United States Arbitration Act, this court is without jurisdiction to direct the parties to proceed to arbitration as required by the concluding clause of that section, because the place and manner of arbitration prescribed by the terms of the contract are beyond the jurisdiction of this court, since the hearings and proceedings thereunder cannot be held conformable to the terms of this statute, and particularly to section 4, which requires the arbitration to proceed within the district in which the petition for an order directing such arbitration was filed. This court cannot direct and otherwise supervise and conclude an arbitration to be held in London, or assume to vacate, modify, or correct any award that might be made there, or, indeed, anywhere, except within this district, nor has it power as a court of admiralty to arbitrarily reform, or modify the terms of the contract by ordering an arbitration elsewhere or otherwise than agreed upon by the parties.

Accordingly the motion to stay proceedings will be denied, and the cause will proceed in the usual course on the merits.