BATSON YARN AND FABRICS MA-
CHINERY GROUP, INC.,
Plaintiff,

v.

SAURER–ALLMA GmbH–ALLGAUER
MASCHINENBAU, a corpora-
tion, Defendant.

Civ. A. No. 69–865.

United States District Court,
D. South Carolina,
Greenville Division.

March 27, 1970.

Donald L. Ferguson (Haynsworth, Perry, Bryant, Marion & Johnstone), Greenville, S. C., for plaintiff.

Robert F. Plaxco (Leatherwood, Walker, Todd & Mann), Greenville, S. C., for defendant.

OPINION and ORDER

DONALD RUSSELL, District Judge.

By contract dated November 1, 1966, plaintiff, a corporation of South Carolina, became the exclusive United States distributor of machinery manufactured by the defendant, a corporation of West Germany, at its Germany plant. Plaintiff alleges that such contract was not terminable prior to January 1, 1968, and then only after six months' prior notice by registered mail. The defendant, it appears from its demand for arbitration, contends both that no prior six months' notice was required for termination of the contract on January 1, 1968, and that, by reason of certain violations of the contract by the plaintiff, it had a right in any event to terminate the contract. Whatever the reason and warrant for such termination, it is undisputed that the defendant did, without giving six months' notice by registered mail, terminate its relationship with the plaintiff on December 31, 1967, and the plaintiff, by this action, seeks recovery of damages in excess of the jurisdictional amount for the alleged breach of the contract as a result of such termination.

The defendant, within due time and on January 19, 1970, entered an appearance and moved to dismiss the action for failure of the plaintiff to submit its claim to arbitration or, failing in that, "for an order staying the above-styled action and all proceedings until an arbitration shall be had in accordance with the terms of the contract" between the parties. Attached to such motion were copies of both the contract between the parties and of defendant's demand upon the plaintiff for arbitration of the dispute by the International Chamber of Commerce, Paris, France. The plaintiff concedes the authenticity of the contract and demand for arbitration as attached to defendant's motion.

The arbitration provision in the contract is as follows:

"All disputes arising in connection with the present contact (contract) shall be finally settled by arbitration.

Arbitration to be held outside the United States of America shall be conducted in accordance with the Rules of Arbitration of the International Chamber of Commerce, unless by written agreement of the parties, they adopt the Rules of the American Arbitration Association. Arbitration to be held in the United States of America shall be conducted in accordance with the Rules of the American Arbitration Association, unless by written agreement of the parties, they adopt the rules of Arbitration of the International Chamber of Commerce.

"Judgment upon the award rendered may be entered in any Court having jurisdiction or application may be made to such Court for a judicial acceptance of the award and an order of enforcement, as the case may be."

On January 23, 1970, plaintiff filed certain Requests for Admission by the defendant and on February 5, 1970, directed Interrogatories to the defendant. On February 6, 1970, the defendant noticed the plaintiff of a motion to stay such Requests for Admission and answers to the Interrogatories "on the ground that the defendant is entitled, under its pending motion, and consistent with the United States Arbitration Act, 9 U.S.C.A., § 3" to have the dispute between the parties arbitrated and proceedings in this Court stayed in the meantime. The plaintiff, at that stage, filed on February 10, 1970, its own motion to enjoin the arbitration proceedings commenced by the defendant before the International Chamber of Commerce, Paris, France, and to grant, instead, arbitration "within the State of South Carolina or at such other place within the United States as the court deems proper in accordance with the rules of the American Arbitration Association".

The motion of the defendant under Section 3, Federal Arbitration Act, 9 U.S.C., to stay the proceedings until arbitration of the dispute between the parties can be had before the International Chamber of Commerce and the counter-motion of the plaintiff for a stay of such arbitration and for arbitration under Section 4, Federal Arbitration Act, 9 U.S.C., in the United States by the American Arbitration Association, are now before me for determination.

■ Jurisdiction is clear. The contract is one "evidencing a transaction involving commerce" within the meaning of Section 2 of the Federal Arbitration Act, 9 U.S.C. (see Necchi Sewing Machine Sales Corp. v. Carl (D.C.N.Y. 1966) 260 F.Supp. 665, 667; Hilti, Inc. v. Oldach (1st Cir. 1968) 392 F.2d 368, 370); the controversy is one between a corporation of one of the States of the United States and a corporation of a foreign State (see Section 1332(a)(2), 28 U.S.C.); and the amount in controversy exceeds $10,000. See, El Hoss Engineering & Transport Co. v. American Independent Oil Co. (2d Cir. 1961) 289 F.2d 346, 347, cert. den. 368 U.S. 837, 82 S.Ct. 51, 7 L.Ed.2d 38. Under these circumstances, federal substantive law, as set forth in the Federal Arbitration Act (9 U.S.C., secs. 1–14), is controlling on the rights of the parties. Prima Paint Corp. v. Flood & Conklin (1967) 388 U.S. 395, 400, 87 S.Ct. 1801, 18 L.Ed.2d 1270.

Prior to pressing its own motion for arbitration, the plaintiff has raised two preliminary objections to defendant's motion for a stay. It asserts, relying on the annotation in 5 A.L.R.3d 1008, that arbitrability of a dispute under a contract providing for arbitration requires demand for arbitration during the term of the contract and a demand made after expiration is ineffectual. The annotation, analyzed case by case, does not support the position taken by the plaintiff. Indeed, the very case, to which the annotation is added, holds to the contrary. Thus, in Swift-Chaplin Productions, Inc. v. Love (1963) 219 Cal.App.2d 110, 32 Cal.Rptr. 758, 761, 5 A.L.R.3d 1001, 1006, it was expressly held that the issue whether the contract required that demand for arbitration be "made

during the term of the contract, * * should have been left to the arbitrator". Not one of the cases cited in the annotation supports a ruling that, absent such an express provision in the contract itself, a demand for arbitration prior to termination of the contract is a condition of arbitrability. In most of the cases cited, the contract in question fixed a specific time within which arbitration was required to be demanded and the demand was made after the expiration of such time limit. See, Broadway-Fortieth Street Corp. v. President and Directors of Manhattan Co. (1947) 296 N.Y. 165, 71 N.E.2d 451; Dickens v. Pennsylvania Turnpike Comm. (1945) 351 Pa. 252, 40 A.2d 421; Application of Trimount Clothing Co. (Sup.1952) 112 N.Y.S.2d 814; Publicists Local, etc. v. National Screen Service Corp. (1960) 183 Cal.App.2d 491, 7 Cal.Rptr. 238. The first case discussed in the annotation involved a dispute over a transaction that did not "took (take) place before the expiration of the contract" but concerned a dispute that arose over a transaction that occurred after the contract had terminated when the parties were operating under "some sort of informal arrangement". The Court merely held that there was no basis for concluding that the old contract's terms, including its arbitration clause, continued over and controlled the later relationship of the parties under their "informal arrangement". Korody Marine Corp. v. Minerals & Chemicals Philipp Corp. (2nd Cir. 1962) 300 F.2d 124, 125. Plaintiff specially cites and relies for this argument on Austin Mailers Union, etc. v. Newspapers, Inc. (D.C.Tex.1963) 226 F.Supp. 600, aff. (5th Cir.) 329 F.2d 312, cert. denied 377 U.S. 985, 84 S.Ct. 1894, 12 L.Ed.2d 753, which is discussed in the annotation. As the Court of Appeals, disposing of this case on appeal stated, this case was similar in nature, and was decided on the same grounds as, Boston Printing Pressmen's Union v. Potter Press (D.C.Mass.1956) 141 F.Supp. 553, aff. (1st Cir.) 241 F.2d 787, cert. denied 355 U.S. 817, 78 S.Ct. 21,

2 L.Ed.2d 34. In both cases, a labor union was seeking to use an arbitration clause in an expiring labor contract to fix the terms of a new labor contract. It involved, to use Judge Wyzanski's language in the Potter Press Case, a demand that the Court "direct what may conveniently be described as a *prospective* or *quasi-legislative* arbitration establishing future labor conditions" (italics in opinion, 141 F.Supp. 554) in a new contract then being negotiated by the parties. It concerned not the power to require arbitration of a past dispute under an expired contract but the power to make a "prospective award" in a new contract. (p. 557) As Judge Wyzanski convincingly demonstrated, the power to "enforce a quasi-legislative arbitration provision" by making a "prospective award" was not within the purview of the Federal Arbitration Act. (p. 556) In short, this line of cases is unique to the area of labor negotiations and does not involve the arbitrability of a past dispute under an expired contract where the demand for arbitration was subsequent to the contract's expiration.

On the other hand, there are innumerable cases in which the right to arbitration of a past dispute under an expired contract was sustained even though the demand was made after the contract's expiration. See, for instance, Necchi v. Necchi Sewing Machine Sales Corp. (2d Cir. 1965) 348 F.2d 693, cert. den. 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (demand 1 to 3 months after contract's expiration); Necchi Sewing Machine Sales Corp. v. Carl (D.C.N.Y.1966) 260 F.Supp. 665 (demand almost 5 years after termination); World Brilliance Corp. v. Bethlehem Steel Co. (2d Cir. 1965) 342 F.2d 362 (demand almost 4 years after contract's completion). Indeed, in Monroe Sander Corporation v. Livingston (2d Cir. 1967) 377 F.2d 6, 10, cert. den. 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89, the Court, in ordering arbitration, tartly dismissed a contention such as that posed by the plaintiff with the observation that "whether or not the dispute and the demand for arbitra-

tion occurred after the expiration of the agreement is irrelevant".

■ If it had been the purpose of the parties to the instant contract that any dispute arising thereunder, to be arbitrable, had to have been made the subject of arbitration before the contract expired, they could have incorporated such a limitation in the contract as was done in the *Dickens Case* and similar cases, *supra*. Absent such a limitation, there seems no reason to restrict arbitrability to disputes that arise under the contract to situations where the demand for arbitration precedes the termination of the contract. It could well be that the party seeking arbitration did not know that the other party intended to assert a claim until after the expiration of the contract. He could hardly, under those circumstances, be expected to demand arbitration until he knows of the dispute and that the other party expects to press it.[1] Yet, by his inaction and delay, the party objecting to arbitration in such a case could thereby defeat the contractual right of the other to have arbitration of the dispute if any such rule as that suggested by the plaintiff were adopted. Such a result should not be countenanced, especially since arbitration is favored under the Federal Arbitration Act. The fact that defendant's demand for arbitration was subsequent to the termination of the contract between the parties would thus be no bar to defendant's right to arbitration.

■ The plaintiff next argues that the defendant has waived its right to arbitration or to a stay pending arbitration.[2] It may well be that this claim of waiver or "default" is one for the arbitrators and not for the Court. See World Brilliance Corp. v. Bethlehem Steel Co., *supra* (342 F.2d p. 364). Assuming, though, such issue is for the Court and not for the arbitrators, it is settled that waiver, or "default" under the Act may not arise from mere delay in moving for arbitration. As the Court said in Almacenes Fernandez S.A. v. Golodetz (2d Cir. 1945) 148 F.2d 625, 628, "delay in moving for an arbitration order will not alone amount to a default within" the meaning of Section 3, 9 U.S.C. See, also Harris Hub Bed & Spring Co. v. United Electrical Radio & Machine Workers (D.C.Pa.1954) 121 F.Supp. 40, 42; Lumbermens Mutual Casualty Co. v. Borden Co. (D.C.N.Y. 1967) 268 F.Supp. 303, 313; Hilti, Inc. v. Oldach, *supra* (392 F.2d 368, 372, note 9).

Whether the filing of an action at law[3] or the entering of an answer,[4]

1. See, Necchi Sewing Machine Sales Corp. v. Carl, *supra*, 260 F.Supp. at p. 668:
   "Necchi and Elna certainly cannot be held responsible for the delay by Southwest in not commencing the Oklahoma action against them until more than five years after the alleged breach in 1956."

2. It will be observed that Section 3 of the Federal Arbitration Act requires that the Court grant a stay under a contract providing for arbitration unless "the applicant for the stay is *not in default in proceeding with such arbitration*." (Italics added) The Courts seemingly have construed the term "default" in this section as analogous in meaning to the common law term "waiver". See Robert Lawrence Company v. Devonshire Fabrics, Inc. (2d Cir. 1959) 271 F.2d 402, 412.

3. In Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co. (7th Cir. 1942) 128 F.2d 411, 413, it was said:

   "Plaintiff could have sought arbitration but it exercised its option of bringing suit. By its election, it waived its right to arbitration."
   To the same effect: Cargo Carriers v. Erie & St. Lawrence Corp. (D.C.N.Y. 1952) 105 F.Supp. 638, 639.
   But, see, to the contrary, Chatham Shipping Co. v. Fertex Steamship Corp. (2d Cir. 1965) 352 F.2d 291, 293; and Richard Nathan Corp. v. Diacon-Zadeh (D.C. N.Y.1951) 101 F.Supp. 428, 430.

4. In Cavac Compania, etc. v. Board for Validation of German Bonds (D.C.N.Y. 1960) 189 F.Supp. 205, 209, the Court put it:

   "In the course of litigation, there comes a time when it would be manifestly unfair to permit one side to resort to arbitration over the protest of the other. As a general rule, the courts have held that this point of no

especially when accompanied by a counterclaim,[5] waives the right subsequently to demand arbitration or to seek a stay therefor is a matter of some conflict in the decisions. The modern rule, though, based on a liberal national policy favoring arbitration, seems to be that waiver or "default" under the statute may not rest mechanically on some act such as the filing of a complaint or answer but must find a basis in prejudice to the objecting party.[6] This principle was recently expressed in Carcich c. Rederi A/B Nordie (2d Cir. 1968) 389 F.2d 692, 696, where the Court said that, "It is not 'inconsistency', but the presence or absence of prejudice which is determinative of the issue. * * * for there is an overriding federal policy favoring arbitration." This conclusion was implicit in the earlier decision in Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise (4th Cir. 1956) 239 F.2d 689, 692–693, where it was held, in sustaining the right to arbitration made after answering and counterclaiming, that the right had not been waived since the party objecting to arbitration had not been "unduly burdened" by any delay by the other party in making its demand for arbitration. The same idea was involved in the conclusion in Almacenes Fernandez, S.A. v. Golodetz, *supra* (148 F.2d p. 628), where the Court justified the denial of a claim of waiver of the right to arbitration by finding that "no 'steps of any importance having occurred meanwhile in the suit.' " And the

principle has been applied in a number of recent cases. See Lumbermens Mutual Casualty Co. v. Borden Co., *supra* (268 F.Supp., p. 313); Mason v. Stevensville Golf and Country Club, Inc. (D.C. N.Y.1968) 292 F.Supp. 348, 349; Commercial Metals Co. v. International Union Marine Corp. (D.C.N.Y.1968) 294 F.Supp. 570, 573.

In fact, most of the cases cited in support of the rule that the filing of an action or answer or counterclaim constituted a waiver of the right to arbitrate by the party filing such involved elements amounting to prejudice to the party claiming waiver. Thus, in the leading case of Radiator Specialty Co. v. Cannon Mills (4th Cir. 1938) 97 F.2d 318, 319, 117 A.L.R. 299, the party seeking arbitration had filed a counterclaim, had secured one continuance, and failed to file any demand for arbitration until "the day expressly agreed on as the day when the trial should be had" and then "without giving notice". The discretion of the District Court exercised in concluding waiver under those circumstances was upheld.[7] In Blake Construction Company v. United States for Use and Benefit of Lichter (5th Cir. 1958) 252 F.2d 658, 662, another leading case, the demand for a stay was made "for the first time as the actual trial got underway" and was "a pure afterthought * * * not asserted in good faith". And in American Locomotive Co. v. Chemical-Research Corp. (6th Cir. 1948) 171 F.2d 115, 121, cert.

---

return is reached when the defendant files its answer."
To the same effect: The Belize (D.C. N.Y.1938) 25 F.Supp. 663, 664, app. dis. (2d Cir.) 101 F.2d 1005.

5. See, E. I. Du Pont De Nemours & Co. v. Lyles & Lang Const. Co., (4th Cir. 1955) 219 F.2d 328, 334, cert. den. 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280, where Judge Parker said:
   "It is also quite generally held that right to rely upon an arbitration agreement is waived by filing a counterclaim, which, without demanding arbitration, asks relief from the court with respect to matters embraced within the agreement."

6. Thus, in Hilti, Inc. v. Oldach (1st Cir. 1968) 392 F.2d 368, 372, note 9, the Court says:
   "The cases demonstrate with marked consistency the reluctance of courts to find default despite substantial delay and intervening proceedings."

7. To same effect, see La Nacional Platanera, S. C. L. v. North American Fruit & S.S. Corp. (5th Cir. 1936) 84 F.2d 881, 882–883.
   See, also, the discussion of this case in Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, *supra* (239 F.2d pp. 692–693).

den. 336 U.S. 909, 69 S.Ct. 515; 93 L.Ed. 1074, an oft-cited case, the request for a stay followed the filing of a counterclaim and participating in "expensive discovery proceedings" over a period of 7 years.[8]

Whichever rule is applied in this case, however, the defendant was not in "default" in seeking a stay and cannot be said to have waived its right to arbitration. It moved for a stay prior to filing any answer and before taking any action in the proceedings at law. It took no inconsistent position at any time. The plaintiff cannot be and is not prejudiced by this motion of the defendant.

This brings us to the crucial issue in this case, as posed by the conflicting motions of the parties: Is the defendant entitled to a stay in order that the arbitration before the International Chamber of Commerce may proceed or is the plaintiff, after first eschewing arbitration in favor of an action at law, entitled to supersede the arbitration abroad with arbitration in the United States by the American Arbitration Association? The conflict between the parties arises because of the language of the arbitration clause itself.

Unfortunately, this arbitration provision leaves undetermined whether arbitration is to be by the International Chamber of Commerce or the American Arbitration Association. The defendant takes the position that the party first demanding arbitration has the right of choice of arbitration. Thus, it contends that it, having acted first to invoke arbitration under the contract, had the right to designate the International Chamber of Commerce as the arbitrator. The plaintiff, on the other hand, urges that the Court lacks authority to order arbitration outside its jurisdiction, especially abroad, and, in addition, it would

be very unfair and extremely onerous to require it to participate in an arbitration abroad; therefore, it demands that the Court order arbitration in the United States under the authority of Section 4, 9 U.S.C.

At the outset, the plaintiff is faced with the problem of its own possible waiver of a right to demand arbitration as a result of the filing of its action at law for damages. Under certain of the authorities already discussed, the plaintiff would be foreclosed from seeking arbitration. However, the more modern rule, as set forth in the cases already cited, and the one which accords more nearly with the purposes of the Federal Arbitration Act itself— would deny that the plaintiff has waived as a result of the filing of its action at law a right to demand arbitration, especially when the demand is made within such a short time after the filing of its suit and before the defendant has answered. The real issue in this case, however, is not whether the plaintiff waived or lost its right to demand arbitration by the filing of its action at law; it is whether, by delaying to make such demand until after the other party had commenced arbitration in accordance with the authorization of the contract, the plaintiff waived or lost its right to claim thereafter arbitration on its own terms, thereby nullifying the action previously taken under the contract by the defendant and voiding the arbitration proceedings already properly begun by the defendant under the contract. And it is to this issue that we must turn and that is decisive of these motions.

Turning to that basic issue, I am convinced the position of the defendant represents the proper solution of the conflicting claims of the parties over the arbitration proceedings. The contract

---

8. To similar effect, see Barber & Ross Company v. Cornell & Company (D.C. D.C.1965) 242 F.Supp. 825, 826, aff. 123 U.S.App.D.C. 378, 360 F.2d 512; United Nations Children's Fund v. S/S Nordstern (D.C.N.Y.1965) 251 F.Supp. 833, 840.

See, also, Carcich v. Rederi A/B Nordie, *supra* (389 F.2d p. 696, note 7):
"Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration."

required a choice to be made between two agencies for conducting such proceedings. Absent any order of priority in such choice, it would appear that the party first demanding arbitration should have the right to exercise the right of choice of such arbitrating agency and designate the arbitrating agency to resolve the dispute. Assuredly, such right of the original claimant for arbitration to designate the appropriate arbitrating agency should not be tardily preempted and nullified by one who purposely, at first, chose to exercise the option to resort to a suit at law in preference to arbitration and only when faced by arbitration forced by the opposing party, seeks arbitration. By its delay until after the defendant had properly begun arbitration proceedings before a body designated in the contract as authorized to conduct the arbitration, the plaintiff waived any right it had to claim arbitration in another proceeding that would have superseded those already begun. The defendant would clearly be prejudiced by any other result.

▇ To this conclusion, however, the plaintiff offers several objections. First, it argues that the power of the Court to grant defendant's motion is restricted to those situations in which arbitration is to be had within the jurisdiction of the Court. For that reason, it contends that arbitration must be had "within the United States" and with the American Arbitration Association as arbitrator. In support of its position, it relies on Continental Grain Co. v. Dant & Russell (9th Cir. 1941) 118 F.2d 967. The difficulty with this argument is that it assumes that defendant's motion is predicated upon Section 4 of the Federal Arbitration Act. Of course, if it were, then the cited authority which deals with an application under Section 4 and particularly that portion of such section as specifically provides that the proceedings "shall be within the district in which the petition for an order directing such arbitration is filed", would be applicable. But the defendant has filed no petition to compel arbitration under Section 4; its motion is for a stay under Section 3 of the Act. It was authoritatively determined in Shanferoke Coal & Supply Co. v. Westchester Service Corp. (1935) 293 U.S. 449, 453, 55 S.Ct. 313, 79 L.Ed. 583, that the power to grant a stay pending arbitration under Section 3 of the Act was not conditioned upon the existence of a power to compel arbitration under Section 4 and that, acting under Section 3, the Court may properly "order a stay even when it cannot compel the arbitration" and even though arbitration must take place beyond the jurisdiction of the Court.[9] And this is true, whether the arbitration is to be in the United States or in a foreign country. For instances in which Courts, acting under Section 3, have granted stays pending arbitration in a foreign country, see: Danielsen v. Entre Rios Rys. Co. (D.C. Md.1927) 22 F.2d 326 (arbitration in England); The Quarrington Court (D.C.N.Y.1938) 25 F.Supp. 665 (arbitration in England); Uniao De Transportadores, etc. v. Companhia De Navegacao, etc. (D.C.N.Y.1949) 84 F.Supp. 582 (arbitration in Portugal); International Refugee Organization v. Republic S.S. Corp. (D.C.Md.1950) 93 F.Supp. 798, appeal dismissed (4th Cir.) 189 F.2d 858 (arbitration in England); Fox v. The Giuseppe Mazzini (D.C.N.Y.1953) 110 F.Supp. 212 (arbitration in Eng-

9. See Agostini Bros. Bldg. Corp. v. United States, etc. (4th Cir. 1944) 142 F.2d 854, 857, where, quoting from an earlier opinion of Judge Learned Hand, the Court put it that " 'section 3 authorizes a stay even though the arbitration must take place beyond the jurisdiction of the Court.' "
To the same effect is United States for Use of De Lay & Daniels, Inc. v. American Employers Insurance Co. of Mass. (D.C.S.C.1968) 290 F.Supp. 139, 140.
The distinction between actions under Section 4 and motions filed under Section 3 of the Federal Arbitration Act, as enunciated in the *Shanferoke Case*, is discussed and explained in considerable detail in Kulukundis Shipping Co. v. Amtorg Trading Corp. (2d Cir. 1942) 126 F. 2d 978, 987–988.

land); Mannesmann Rohrleitungsbau v. S.S. Bernhard Howaldt (D.C.N.Y.1965) 254 F.Supp. 278, 279 (arbitration in Holland); see Konstantinidis v. S.S. Tarsus (D.C.N.Y.1965) 248 F.Supp. 280, 288, aff. (2d Cir.) 354 F.2d 240; Hilti, Inc. v. Oldach, *supra* (392 F.2d 368) (in Puerto Rico proceedings a stay awaiting arbitration in Connecticut was ordered, the Court observing that "the assertion that arbitration proceedings cannot be held outside Puerto Rico conflicts with Section 3 of the Federal Arbitration Act which speaks of arbitration 'in accordance with the terms of the agreement'".) In *Shanferoke*, the two early cases to the contrary, The Silverbrook (D.C.La.1927) 18 F.2d 144, and The Beechwood (D.C.N.Y.1929) 35 F.2d 41, were disapproved (see note 2, 293 U.S. p. 453, 55 S.Ct. 313) and, in 12 A.L.R.3d 907, were described as "apparently no longer the law in view of later federal decisions".

▇▇ There is another compelling reason in this case why plaintiff's objection to a stay pending arbitration abroad cannot be sustained. Under an existing Treaty of "Friendship, Commerce and Navigation" between the United States of America and the Federal Republic of Germany, signed October 29, 1954, and entered into force July 14, 1956, it is provided:

> "Contracts entered into between nationals or companies of either party and nationals or companies of the other party that provide for settlement by arbitration of controversies shall not be deemed unenforceable within the territories of such other party merely on the grounds that the place designated for arbitration proceedings is outside such territories or that the nationality of one or more of the arbitrators is not that of such other party. Awards duly rendered pursuant to any such contracts which are final and enforceable under the laws of the place where rendered shall be deemed conclusive in enforcement proceedings brought before the courts of competent jurisdiction of either party, and shall be entitled to be declared enforceable by such courts, except where found contrary to public policy." 7 U.S.T. 1840, at p. 1845.

This provision, incorporated in a treaty duly ratified, has the force of law and "is, of course, 'the supreme Law of the Land'". Samann v. Commissioner of Internal Revenue (4th Cir. 1963) 313 F.2d 461, 463. To hold in this case that arbitration abroad of a dispute under a contract entered into between a German national or company and an American company cannot be had would nullify the plain terms of this Treaty. That this Court may not do. See, Sumaza v. Cooperative Association (D.C.P.R.1969) 297 F.Supp. 345, 349–50.

▇▇ Apart from the question of the Court's power to stay proceedings pending arbitration abroad, the plaintiff presses the argument that it would be unfair and excessively onerous to force it into an arbitration abroad and that, under all the circumstances, Greenville in the District of South Carolina is the fair place for arbitration. This argument overlooks the fact that the Courts do not write contracts, they merely enforce those the parties themselves have made. The position of the plaintiff is similar to that taken by the defendant in Amtorg Trading Corp. v. Camden Fibre Mills, Inc. (1952) 304 N.Y. 519, 109 N.E.2d 606, 607, involving a contract between the plaintiff, an American corporation but "in effect an agency of the Soviet Government", and the defendant Pennsylvania corporation. The contract provided that any dispute should be arbitrated "before the U.S.S.R. Chamber of Commerce Foreign Trade Arbitration Commission in Moscow, U.S.S.R." A dispute having arisen, the plaintiff sought a stay in favor of arbitration in Moscow as provided under the contract. The defendant objected much as the plaintiff does here that a stay in favor of arbitration without the United States—particularly in Russia—was both illegal and unfair. The Court summarily dismissed

the contention, remarking (109 N.E.2d p. 607):

"Camden chose to do business with Amtorg and to accept, as one of the conditions imposed, arbitration in Russia; it may not now ask the courts to relieve it of the contractual obligation it assumed."

The plaintiff suggests, too, that the law to be applied in the arbitration is the law of South Carolina and points, in support of such contention, to the provision in the contract that, "The contract shall be governed by the law being in force at the place of business of the Manufacturer". It contends that, since the arbitration would conform with the law of South Carolina, the arbitration should be conducted in South Carolina. There can be no dispute that "parties are free to select the applicable law governing rights created by an arbitration agreement" and the Court will give effect to such selection. Necchi Sewing Machine Sales Corp. v. Carl, *supra*, (260 F.Supp. at p. 667, citing Restatement (Second), Conflict of Laws § 354(h)). But it does not follow that, in this case, the parties have agreed that the law of South Carolina shall apply. To the contrary, the proper construction of the provision is that the law of "the place of business of the Manufacturer", the defendant, shall prevail and that "place" is clearly Germany. The contention that, simply because at one time the defendant had a warehouse in Greenville, that fixes "the place of business" of the defendant in Greenville would do violence to the reasonable construction of that term. The "place of business" of the defendant, as described in the contract, quite obviously meant its headquarters and manufacturing operations in Germany. So far, then, from adding support to plaintiff's position, this provision lends persuasiveness to the argument of the defendant.

To conclude, the motion of the defendant for a stay of proceedings herein under Section 3 of the Federal Arbitration Act (9 U.S.C. sec. 3), pending arbitration of the dispute between the parties by the International Chamber of Commerce, is sustained and the stay is hereby granted. The motion of the plaintiff for a stay of such arbitration proceedings before the said International Chamber of Commerce and an order for arbitration herein before the American Arbitration Association is denied.

And it is so ordered.