**Arthur COHN, and Michael Arthur Film Productions, a company doing business under the laws of Liechtenstein, Plaintiffs-Appellees,**

v.

**Richard L. ROSENFELD, Defendant-Appellant.**

No. 83–5729.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 7, 1983.

Submitted Jan. 23, 1984.

Decided April 25, 1984.

Patricia L. Glaser, Wyman, Bautzer, Rothman, Kuchel & Silbert, Los Angeles, Cal., for plaintiffs-appellees.

James P. Tierney, Los Angeles, Cal., for defendant-appellant.

Before GOODWIN, WALLACE, and TANG, Circuit Judges.

WALLACE, Circuit Judge:

Rosenfeld appeals from a judgment in favor of Cohn and Michael Arthur Film Productions (Film Productions) on their breach of contract claims. Rosenfeld argues that the district court lacked subject matter jurisdiction and that it erred by awarding Cohn and Film Productions damages for their lost profits. Rosenfeld also claims that the district court abused its discretion by not disqualifying the law firm representing Cohn and Film Productions. We affirm.

I

Rosenfeld is a citizen of California and a distributor of motion pictures. Cohn is a citizen of Switzerland and one of the owners of Film Productions, a limited liability company organized under the laws of Liechtenstein and known as an "anstalt" or "establishment." In July of 1977 Rosenfeld entered into a written licensing agreement with Cohn and Film Productions. The agreement granted Film Productions exclusive exhibition and exploitation rights to seven full-length films in the German-speaking portions of Europe for a ten year period beginning in March 1979. Rosenfeld received half of the $20,000 licensing fee at the time the agreement was executed.

In December 1977, Film Productions reached an oral agreement to license a package of thirty motion pictures to a German television network. This package included three of Rosenfeld's films. Following the standard practice of the motion picture industry in Europe, the licensing agreement with the German network called for a licensing fee of 126,000 DM for each of the thirty films. This "block booking" practice allows European film distributors to offset the effects of relatively low maximum licensing fees by mixing high and low grade motion pictures in a "package" of films. Film Productions paid a 7.5% commission to a German distributor for negotiating the agreement with the German network.

Approximately one month later, Rosenfeld notified Cohn that he was terminating the licensing agreement with Film Productions. Rosenfeld had forgotten that he had given a previous licensee an option to renew its license for the same films covered by the licensing agreement with Film Productions. When the previous licensee exercised its option to renew its license, Rosenfeld informed Cohn that he could no longer deliver the films to Film Productions. The cancellation of this agreement caused Film Productions to terminate its package licensing agreement with the network. Following the cancellation of the network licensing agreement, Film Productions, through a subsidiary, entered into a licensing agreement with another German film distributor. Under that agreement, Film Productions's subsidiary received 100,000 DM for each of ninety-six films. This subsequent agreement included the thirty films from the cancelled network package, less the three Rosenfeld declined to deliver because of his renewal obligation.

Cohn and Film Productions filed this diversity action in the Central District of California, seeking damages from Rosenfeld for his breach of the licensing agreement. Following a bench trial, the district court granted judgment to Cohn and Film Productions and awarded them $350,455.61 in damages. Rosenfeld moved for a new trial, claiming that the district court lacked subject matter jurisdiction. The district court granted the motion and held a new trial on the limited issue of jurisdiction. The court held that diversity jurisdiction existed and reinstated the previous judgment.

## II

Rosenfeld's primary contention on appeal is that Cohn and Film Productions failed to establish the facts necessary to support diversity jurisdiction in the federal courts. Specifically, Rosenfeld argues that Film Productions, a Liechtenstein anstalt, is not a corporation for purposes of 28 U.S.C. § 1332(c). Accordingly, Rosenfeld claims that the district court should have determined diversity in this case on the basis of the citizenship of Film Productions's individual owners rather than on its place of organization. Because we require complete diversity, *see, e.g., Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978); *Dolch v. United California Bank*, 702 F.2d 178, 181–82 (9th Cir.1983), under Rosenfeld's theory if even one of Film Productions's owners was a United States citizen domiciled in California, *see Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir.1983), the district court lacked subject matter jurisdiction. Cohn and Film Productions, however, have refused to identify the owners of Film Productions.

The district court determined that jurisdiction existed in this case by applying a rule of law to undisputed facts. We therefore review the jurisdictional issue de novo. *See United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1108 (9th Cir.1976); 5A J. Moore, *Moore's Federal Practice* ¶ 52.03[2] (2d ed. 1982).

Rosenfeld argues that corporations represent the only exception to the general rule that we determine an entity's citizenship for purposes of diversity jurisdiction by reference to the citizenship of its individual members. He relies primarily on the Supreme Court's decisions in *United Steelworkers of America, AFL–CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) (*Bouligny*), and *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (*Great Southern*). In *Bouligny*, the district court saw "no common sense reason for treating an unincorporat-

ed national labor union differently from a corporation" for purposes of diversity jurisdiction. *See* 382 U.S. at 146, 86 S.Ct. at 273. The Supreme Court disagreed and adhered to the "generally prevailing principle that an unincorporated association's citizenship is that of each of its members." *Id.* Similarly, in *Great Southern*, the Court refused to treat a limited partnership as a corporation for federal diversity jurisdiction purposes where the state accorded limited partnerships some, but not all, of the characteristics of a corporation. 177 U.S. at 457, 20 S.Ct. at 693. Relying on the principles announced in *Bouligny* and *Great Southern*, Rosenfeld contends that anstalts are not corporations under Liechtenstein law and thus cannot come within the exception established by 28 U.S.C. § 1332(c).

Liechtenstein does allow the formation of corporations but anstalts differ markedly from corporations in Liechtenstein. Rosenfeld argues persuasively that the anstalt resembles a business trust but not a corporation. Accepting that argument, however, does not answer the basic question before us.

We find Rosenfeld's reliance on *Bouligny* and *Great Southern* misplaced and his attempt to analyze the "corporateness" of foreign business entities such as Liechtenstein's anstalt fundamentally wrong. The determinative question in this case is not whether Film Productions is a corporation for purposes of 28 U.S.C. § 1332(c), but instead whether Film Productions is "a citizen or subject" of a foreign state under 28 U.S.C. § 1332(a)(2). The most relevant Supreme Court precedent is thus *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933) (*Russell*), rather than *Bouligny* or *Great Southern*. In *Russell*, jurisdiction depended on the treatment of a *sociedad en comandita*, a Puerto Rican business entity similar to a limited partnership. The Court distinguished "the tradition of the common law," which classified legal entities as either corporations or partnerships, from the more diverse tradition of the civil law as expressed in the Code of

Puerto Rico. 288 U.S. at 480–81, 53 S.Ct. at 448–49. The Court concluded:

> In the law of its creation the *sociedad* is consistently regarded as a juridical person. ... That personality is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the *sociedad* has a different status for purposes of federal jurisdiction than a corporation organized under that law.

*Id.* at 481–82, 53 S.Ct. at 449. Although courts and commentators have read the holding in *Russell* narrowly, *see* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3630 & n. 22 (1975), we find it persuasive in the present case. Indeed, the Court in *Bouligny* characterized the *Russell* decision as presenting the "[problem] of fitting an exotic creation of the civil law ... into a federal scheme which knew it not." 382 U.S. at 151, 86 S.Ct. at 275. The present case raises precisely that problem.

The parties have cited us no reported decision of any federal court, nor have we found any federal case, discussing whether a Liechtenstein anstalt is a juridical person for purposes of federal diversity jurisdiction. Federal courts applied section 1332(a)(2) to Liechtenstein anstalts in *James Wood General Trading Establishment v. Coe*, 297 F.2d 651, 652–53 (2d Cir.1961), and *Baker v. Gotz*, 336 F.Supp. 197, 200 (D.Del.1971), *aff'd without opinion*, 492 F.2d 1238 (3d Cir.), *cert. denied*, 417 U.S. 955, 94 S.Ct. 3084, 41 L.Ed.2d 674 (1974), but apparently no one questioned jurisdiction in either case. Indeed, federal courts have had difficulty explicitly characterizing this unique business entity. They have described anstalts as: "corporation[s] ... similar to a one-man corporation," *Kraus v. Commissioner*, 59 T.C. 681, 685 (1973); "trust[s]," *Ronson Corp. v. Liquifin A.G.*, 370 F.Supp. 597, 603 (D.N.J.), *aff'd*, 497 F.2d 394 (3d Cir.), *cert. denied*, 419 U.S. 870, 85 S.Ct. 129, 42 L.Ed.2d 108 (1974); and "business entit[ies] peculiar to Liechtenstein," *United States v. Koenig*, 388 F.Supp. 670, 692 (S.D.N.Y.1974).

However, we need not resolve the question of which common law entity anstalts most nearly resemble. Section 1332(a)(2) applies to foreign legal entities of all kinds, so long as the entity is considered a juridical person under the law that created it. *See, e.g., Fasco, A.G. v. Modernage, Inc.*, 311 F.Supp. 161, 162 (W.D.Pa.1970) (foreign Aktiengesellschaft creates diversity under 1332(a)(2)); *Batson Yarn and Fabrics Machinery Group, Inc. v. Saurer-Allma GmbH-Allgauer Maschinebau*, 311 F.Supp. 68, 70 (D.S.C.1970) (GmbH creates diversity under 1332(a)(2)). We have no doubt that Liechtenstein regards anstalts as juridical persons under its laws. Anstalts have liability limited to their capitalization and can both sue and be sued in their own names. Any recovery by an anstalt in such litigation becomes an asset of the anstalt. Moreover, the relevant Liechtenstein statute states that an anstalt "is a legally independently organized enterprise ... subject to the regulations governing trust companies *with juridical personality.*" Das Personenund Gessellschaftsrecht, art. 534 (LLGB1. 1926 No. 4, as amended) (translated) (emphasis added). Like the *sociedad* in *Russell*, the anstalt presents an exotic creation of the civil law that is regarded as a juridical person by the law that created it. *See also* P. Marxer and A. Goop, The formation of undertakings in Liechtenstein A Guide 19 (n.d.) ("The Establishment [anstalt] is a very unusual form of an institution of civil law with legal personality."). We therefore conclude that Film Productions is a "citizen or subject" of Liechtenstein for purposes of 28 U.S.C. § 1332(a)(2) and the district court had jurisdiction to hear this case.

This case might require application of section 1332(c) if Film Productions had its principal place of business in the United States. *Compare Eisenberg v. Commercial Union Assurance Co.*, 189 F.Supp. 500, 501–02 (S.D.N.Y.1960) (1332(c) does not apply), *with Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001, 1005–08 (M.D.Ill.1973)

(1332(c) does apply); *see generally Jerguson v. Blue Dot Investment, Inc.,* 659 F.2d 31, 32–36 (5th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); 13 C. Wright, A. Miller & E. Cooper, *supra,* at § 3628. We need not resolve the question, however, because Film Productions does not have its principal place of business in the United States.

Finally, Rosenfeld argues that the interpretation of section 1332(a)(2) which we adopt is unfair to unincorporated American entities. He claims that treating recognized foreign entities as "entities" rather than "corporations" for purposes of diversity jurisdiction gives unincorporated foreign entities an advantage not enjoyed by similar American entities. This argument is unpersuasive. Federal courts have long recognized that other nations, particularly civil law nations, have evolved a scheme of business entities markedly different from that found in the United States. *See Russell,* 288 U.S. at 480–82, 53 S.Ct. at 448–49. Rosenfeld's attempt to compare unincorporated American business entities with unincorporated civil law business entities is therefore virtually meaningless.

■ Making the distinction Rosenfeld advocates might also infringe improperly on the sovereignty of foreign nations. Foreign legal entities need not have the same attributes as an American corporation to sue in the federal courts. Foreign nations make their own laws regarding the formation of legal entities. Under section 1332(a)(2) we ask only whether an entity is regarded as a juridical person by the law under which it was formed. Any further limitation on the standing of these "citizens or subjects" of foreign states would involve judicial encroachment on the sovereignty of the nation that formed them. Courts lack the information, expertise, and political judgment in foreign affairs to undertake this burden. If the disparate treatment accorded American and foreign unincorporated entities by the diversity statute appears improper, the remedy lies with Congress. *Cf. Chemical Transportation Corp. v. Metropolitan Petroleum Corp.,*

246 F.Supp. 563, 567 (S.D.N.Y.1964) (reaching the same conclusion about congressional rather than judicial extension of section 1332(c) to foreign corporations).

## III

In addition to challenging the district court's jurisdiction, Rosenfeld contends it erred by awarding Cohn and Film Productions damages for profits lost as a result of Rosenfeld's breach of the licensing agreement. Essentially, Rosenfeld asserts that it was improper to award Cohn and Film Productions their lost profits because the amount of those profits was unforeseeable, Cohn and Film Productions failed to mitigate their damages, and the damages awarded were speculative.

■ Both parties concede that California law governs this diversity action. California law provides for the recovery of damages for breach of contract "which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ.Code § 3300 (West 1970). California decisions interpreting this section allow the recovery of lost profits where both parties contemplated a resale of contract goods by the purchaser. *E.g., Tomlinson v. Wander Seed & Bulb Co.,* 177 Cal.App.2d 462, 472–73, 2 Cal.Rptr. 310, 316 (1960). In the case before us, the district court found that Rosenfeld knew that Cohn was attempting to obtain the films for redistribution in Europe. The evidence shows that Rosenfeld had previously licensed some of the same films to another European distributor. As a sophisticated businessman with experience in motion picture distribution, Rosenfeld must have known that Cohn and Film · Productions intended to resell the films. The district court's finding concerning the nature of the transaction was not clearly erroneous. Cohn and Film Productions were therefore entitled to recover their lost profits.

■ Rosenfeld also claims that Cohn and Film Productions may not recover their lost

profits because they failed to mitigate their damages. Rosenfeld argues that Cohn could easily have substituted three "second rate" pictures in the proposed German network package after he learned that Rosenfeld could not fulfill the contract. The record raises conflicting inferences on the mitigation issue. The district court apparently resolved this factual dispute in favor of Cohn and Film Productions. The record indicates that the German network had a particular interest in one or more of the specific films Cohn agreed to license from Rosenfeld. Further, Cohn testified that substitution of other films for the missing Rosenfeld films in the German network package would have upset the "balance" of films in other packages Cohn was planning to market. In view of this evidence, we cannot conclude that the district court's findings on the issue of mitigation were clearly erroneous.

■ Rosenfeld's remaining objections to the damages award are that it was speculative and unconscionable. However, the district judge carefully considered the amount of damages suffered by Cohn and Film Productions and his detailed findings of fact indicate precisely how the amount of damages were determined. These calculations do not reflect any impermissible degree of speculation. Rosenfeld's claim that the amount of damages is unconscionable is similarly unpersuasive. His reliance upon *Schmidt v. Beckelman*, 187 Cal. App.2d 462, 471, 9 Cal.Rptr. 736, 742 (1960), is misplaced because the case before us does not involve circumstances in which "the buyers took unfair advantage of the ignorance of the seller." *Id.* Instead, Rosenfeld is an experienced, sophisticated businessman who was aware of the nature of his agreement with Cohn and Film Productions.

### IV

■ Finally, Rosenfeld claims the district court abused its discretion in denying his motion to disqualify the law firm representing Cohn and Film Productions. Rosenfeld asserts that his previous relationship with a member of the law firm created a conflict of interest in the present action. We have frequently stated that the district court has the primary responsibility for controlling the conduct of the attorneys practicing before it. *E.g., Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980). Accordingly, we will not disturb a district court's ruling on a motion to disqualify counsel "if the record reveals 'any sound' basis for the court's action." *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 438 (9th Cir.1983), *quoting Gas-A-Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1325 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). The record provides ample support for the court's action in the present case. Rosenfeld's claimed "relationship" with a member of the law firm amounted to no more than incidental social contacts and a completely unrelated business transaction. The district court did not abuse its discretion by refusing to disqualify the law firm.

AFFIRMED.